894 So.2d 988 (2004)
Carolyn COLLINS, Appellant,
v.
DAIMLERCHRYSLER CORPORATION, Appellee.
No. 5D03-3999.
District Court of Appeal of Florida, Fifth District.
December 30, 2004.
Rehearing Denied March 4, 2005.
*989 John R. Overchuck and Laura P. Denault of Overchuck, Denault & De Marco, P. A., Orlando, for Appellant.
Wendy F. Lumish and Benjamine Reid of Carlton Fields, P. A., Miami, for Appellee.
ORFINGER, J.
Carolyn Collins appeals the trial court's dismissal with prejudice of her second amended complaint, which asserted a claim under Florida's Deceptive and Unfair Trade Practices Act (FDUTPA)[1] against DaimlerChrysler Corporation (Chrysler). Because we conclude Collins's amended complaint adequately stated a FDUTPA claim, we reverse for further proceedings.
In her second amended complaint, Collins alleged that she owned a Chrysler automobile equipped with GEN-3 seatbelt buckles, which, allegedly due to a design defect, are unreasonably dangerous and unfit for ordinary use as a passenger restraint system. Collins further alleged that she based her decision to purchase a Chrysler, in part, on Chrysler's advertising of its vehicles as safe and in compliance with all relevant safety standards. Collins claimed that Chrysler knew or should have known that the GEN-3 seatbelts were defective, but took no action to remedy the problem.[2] Collins sought damages from Chrysler for the diminished value of her vehicle, measured as the difference in the market value of the automobile in the condition in which it was delivered, and its market value in the condition in which it should have been delivered. She also sought recovery for lost vehicle use during the time required to repair or replace the seatbelts.
On Chrysler's motion, the trial court dismissed Collins's second amended complaint with prejudice, finding that her complaint failed to demonstrate that she had suffered a loss compensable under FDUTPA. On appeal, Chrysler maintains that dismissal was proper because Collins did not incur any out of pocket damages on account of the alleged defects in the GEN-3 seatbelt buckles, and, as such, the complaint failed to state a cause of action. We disagree.
FDUTPA provides that an aggrieved party may initiate a civil action against a party who has engaged in "[u]nfair methods of competition, unconscionable acts or practices," and "unfair or deceptive acts or practices in the conduct of any trade or commerce." § 501.204(1), Fla. Stat. (2003). A primary purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." § 501.202(2), Fla. Stat. (2003); see Marshall v. W & L Enters. Corp., 360 So.2d 1147, 1148 (Fla. 1st DCA 1978) (the statute's purpose is to "make consumers whole for losses caused by fraudulent consumer practices"), rev'd on other grounds, Hubbel v. Aetna Cas. & Surety Co., 758 So.2d 94 (Fla.2000). To give the statute life, the Legislature conferred the right to bring an individual action on any "consumer who has suffered a loss as a result of a *990 violation" of FDUTPA to "recover actual damages, plus attorney's fees and court costs." § 501.211(2), Fla. Stat. (2003).
Here, Collins sought to recover the diminution in value of her Chrysler automobile caused by the allegedly defective seatbelt buckles. FDUTPA authorizes a person "who has suffered a loss" as a consequence of a violation of the statute to recover "actual damages." § 501.211(2), Fla. Stat. (2003). Chrysler argues that diminution in value of a product does not constitute "actual damages" as FDUTPA requires to support a statutory claim. Rather, Chrysler contends that Collins must allege that the seatbelt has malfunctioned or manifested the alleged defect in some way to state a cause of action under FDUTPA. Florida case law shows differently.
In the context of FDUTPA, "actual damages" have long been defined as "`the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties.'" Rollins, Inc. v. Heller, 454 So.2d 580, 585 (Fla. 3d DCA 1984) (quoting Raye v. Fred Oakley Motors Inc., 646 S.W.2d 288, 290 (Tex.Ct.App.1983)); see Smith v. 2001 S. Dixie Highway, Inc., 872 So.2d 992, 994 (Fla. 4th DCA 2004); H & J Paving of Fla., Inc. v. Nextel, Inc., 849 So.2d 1099 (Fla. 3d DCA 2003) (recognizing that measure of actual damages is the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the parties' contract).
In Davis v. Powertel, 776 So.2d 971 (Fla. 1st DCA 2000), the First District Court of Appeal determined that FDUTPA allows for damages based on diminution of value. There, the class plaintiff alleged that Powertel sold cellular telephones without informing the purchasers that the phones were programmed to work only with Powertel's communication services. The class plaintiff alleged that although these phones appeared to be the same as other Nokia and Motorola models, they contained a chip that rendered them inoperable when used with any other wireless phone service. The circuit court dismissed the class plaintiff's FDUTPA claim. However, on appeal, the appellate court agreed that the class plaintiff adequately stated a claim for damages under FDUTPA, recognizing "[t]he [claim], according to the plaintiffs, was that Powertel's alleged nondisclosure had reduced the value of the phone in each case." Id. at 973. Accordingly, the court allowed the case to proceed because the "alleged deceptive practice reduced the value of the telephones." Id. at 974-75 (emphasis added); see also Fort Lauderdale Lincoln Mercury, Inc. v. Corgnati, 715 So.2d 311, 313 (Fla. 4th DCA 1998).
Admittedly, there are jurisdictions with similar consumer protection laws that support Chrysler's argument that actual out of pocket losses are a necessary prerequisite to a deceptive trade practices action. See, e.g., In re Bridgestone/Firestone, Inc., 288 F.3d 1012 (7th Cir.2002). However, Florida decisional law has followed a different track. If the courts have misperceived legislative intent, the Legislature can surely rectify the problem. However, we observe that Florida courts have allowed diminished value to serve as "actual damages" recoverable in a FDUTPA claim since at least Rollins in 1984 without any corrective action by the Legislature.
We see no requirement in FDUTPA that a defect manifest itself by failing to operate in an emergency or by causing injury. Under the facts asserted in this case, Collins has alleged more than a possible injury. She claims an actual injury *991 in the form of insufficient product value. In other words, she contends that she did not get what she bargained for. Whether her allegations have merit remains to be decided.[3]
This case turns on a relatively simple question, at least as to damages  Is a car with defective seatbelt buckles worth less than a car with operational seatbelt buckles? Common sense indicates that it is, but, at this stage of the case, we need not decide that issue. Rather, we only determine that Collins is entitled to go forward with her case.
For the foregoing reasons, we reverse and remand for further proceedings consistent herewith.
REVERSED and REMANDED.
TORPY and PALMER, JJ., concur.
NOTES
[1] §§ 501.201-.213, Fla. Stat. (2003).
[2] Collins sought to represent a putative class, consisting of persons who purchased or leased 1993 Chrysler minivans and 1997-1998 Dodge Dakota and Durango vehicles equipped with GEN-3 seatbelt buckles. Collins expressly excluded persons who have actions for damages for personal injury or property damage from putative class. Because the class has not yet been certified, we express no opinion on the suitability of this matter for class certification or of Collins as a class representative.
[3] Perhaps, this case is unique in that automobile safety belts "present special reliability concerns. They are used for the emergency protection of human life, and unfortunately, an ordinary passenger has no way of knowing whether his or her seatbelt will actually perform until an unexpected moment of impact, when an unforeseeable collision forces reliance on the seatbelt's emergency protection. Wearing a seatbelt may bolster an expectation that it will perform in a time of need, but ... such use may also imbue dangerously defective product with a false and misleading appearance of reliability." DaimlerChrysler Corp. v. Inman, 121 S.W.3d 862, 879 (Tex.Ct.App.2003).