**DAIMLERCHRYSLER
CORPORATION,**
Petitioner,

v.

Bill INMAN, David Castro, and John Wilkins, Each Individually and on Behalf of all others Similarly Situated, Respondents.

No. 03–1189.

Supreme Court of Texas.

Argued Jan. 6, 2005.

Decided Feb. 1, 2008.

Rehearing Dismissed April 4, 2008.

William V. Dorsaneo III, Richard A. Smith, Lynn Tillotson & Pinker, L.L.P., Dallas, Mike A. Hatchell, Locke Lord Bissell & Liddell, LLP, Molly H. Hatchell, Locke Liddell & Sapp LLP, Austin, TX, Theodore J. Boutrous Jr., Gibson, Dunn, & Crutcher, LLP, Washington, DC, Audrey Mullert Vicknair, Law Office of Audrey Mullert Vicknair, Corpus Christi, Roberta J. Hegland, Bracewell & Giuliani, LLP, Austin, Oscar Rey Rodriguez, Fulbright & Jaworski L.L.P., Dallas, TX, Charles A. Newman, Bryan Cave, LLP, Kathy A. Wisniewski, St. Louis, MO, Suellen Ratliff and Mark S. Whitburn, Gibson Dunn & Crutcher, LLP, Dallas, TX, for Petitioner.

William R. Edwards III, John Blaise Gsanger, The Edwards Law Firm, Corpus Christi, TX, Carol V. Gilden, Steven A. Kanner and William H. London, Much Shelist Freed Deneberg Ament Bell & Rubenstein, Douglas A. Millen, Chicago, IL, Vernon N. Reaser Jr., Law Office of Vernon N. Reaser, Jr., Victoria, and J. Mitchell Clark, Law Offices of J. Mitchell Clark, Corpus Christi, TX, for Respondent.

Deborah J. La Fetra, Pacific Legal Foundation, Sacramento CA, James J. White, Ann Harbor MI, John H. Beisner, O'Melveny & Myers LLP, Washington DC, for Amicus Curiae.

Justice HECHT delivered the opinion of the Court, in which Justice WAINWRIGHT, Justice BRISTER, Justice MEDINA, and Justice WILLETT joined.

NATHAN L. HECHT, Justice.

Three plaintiffs have sued for themselves and a nationwide class of some ten million owners and lessees of Daimler-Chrysler vehicles, equipped with Gen–3 seatbelt buckles, and sold over the course of a decade. They allege that it is too easy to press the release button on the buckle and unlatch it without intending to do so. They do not contend that this is unavoidable, probable, or even eventual, only that it is possible. Two of the plaintiffs have never experienced anything like what they claim might happen, and the third is not sure whether he has or not, but he has never been injured. They have sued to have the buckles replaced with ones that are harder to unlatch. At least two similar class actions have been brought in other states without success.[1]

---

1. *Quacchia v. DaimlerChrysler Corp.,* 122 Cal. App.4th 1442, 19 Cal.Rptr.3d 508 (2004) (af-

Of course, the risk that seatbelt buckles will be unlatched accidentally can be eliminated by making them more difficult to operate, but that would discourage people from using them at all, resulting in more injuries. In designing seatbelt buckles, the risk of injury from accidental release of easy-to-unlatch buckles must be balanced against the risk of injury from non-use of hard-to-unlatch buckles, for either way, there is risk. The National Highway Traffic Safety Administration is charged with being sure that balance is struck in the right place for vehicles sold throughout the country. The decision is not one for a jury in one state or another to make for the rest of the nation. NHTSA has never required that the Gen–3 buckles be recalled and replaced.

The trial court granted class certification. The court of appeals reversed and remanded for further proceedings, holding that "the trial court still has significant pre-certification work to do" to determine which jurisdictions' laws would govern class members' claims.[2] But the court of appeals rejected DaimlerChrysler's broader argument: that the plaintiffs' fear of possible injury from an accidental release of a seatbelt is so remote that they lack standing to assert their claims.[3] That is, DaimlerChrysler argues not merely that the plaintiffs' claims will fail but that the court lacks jurisdiction to hear them. We agree, reverse the judgment of the court of appeals, and order the case dismissed.

## I

Three Nueces County residents, Bill L. Inman, David Castro, and John Wilkins, bought Dodge vehicles manufactured by DaimlerChrysler Corp., equipped with Gen–3 seatbelt buckles—respectively, a new 1997 Dodge Caravan, a new 1995 Dodge Ram 1500, and a used 1999 Dodge Intrepid. Castro and Wilkins testified that they had never experienced any problems with the buckles and had never heard of anyone who had. Wilkins had been in one accident and the seatbelt worked properly. Inman testified that his seatbelt might have released twice when it should not have, but he was "not a hundred percent sure of this because [he] didn't pay any attention at the time". The first time, he did not know how he hit the release button, but "all at once" his seatbelt was loose. The second time, he said, he thought he bumped the button while trying to replace the lid on a cooler sitting between the seats of his van. He was not hurt or endangered either time, and he does not know of anyone who was ever harmed because of a Gen–3 buckle.

In June 2000, Inman sued DaimlerChrysler in the county court at law in Nueces County, alleging that the Gen–3 buckles were defective. Castro and Wilkins joined as plaintiffs in January 2002. In depositions, the plaintiffs explained why they decided to sue even though they had never been hurt because of their seatbelts. Inman testified that he had run into his

firming the trial court's refusal to certify a class); *Hiller v. DaimlerChrysler Corp.*, No. 02–681, 2007 Mass.Super. LEXIS 442, 2007 WL 3260199 (Mass.Super.Ct. Sept. 25, 2007) (refusing class certification). In remanding *Hiller* to state court after removal, the United States District Court could not help but observe that "plaintiffs' lawsuit appears to be as manufactured as defendant's cars". *Hiller v. DaimlerChrysler Corp.*, No. Civ.A. 02–10533–RWZ, 2004 U.S. Dist. LEXIS 4578, at *3, 2004 WL 574331 (D.Mass. Mar.23, 2004).

Two other state court class actions have been removed and remanded. *Coker v. DaimlerChrysler Corp.*, 220 F.Supp.2d 1367 (N.D.Ga. 2002); *Sylvester v. DaimlerChrysler Corp.*, No. 1:02CV0567, 2002 U.S. Dist. LEXIS 17989, 2002 WL 32005242 (N.D.Ohio Mar.25, 2002).

**2.** 121 S.W.3d 862, 886 (Tex.App.-Corpus Christi 2003).

**3.** *Id.* at 885.

lawyer on the street, who told him "there could be a problem with the seatbelt", and "some way or another [they] got around to sort of discussing a lawsuit." According to Castro's testimony, he became involved in this lawsuit after hearing that the seatbelts in his Dodge truck were defective from his cousin, an investigator working for the law firm representing Inman. Wilkins testified that he was informed by a friend who worked for the same firm that there was litigation over whether the Gen–3 buckle was defective. And so the three decided to sue on behalf of ten million vehicle owners and lessees across the nation.

In their seventh amended petition, the plaintiffs alleged that the Gen–3 buckle is "dangerously subject to accidental release, far more dangerous than other buckle designs", that it is "subject to release at any time, and especially in the event of a collision", and that the buckle "design does not minimize the possibility of accidental release". The plaintiffs do not contend that the buckle will release by itself; it must be pressed. They contend only that it is too easy for the button to be pressed inadvertently, either by the wearer or something else in the vehicle. The plaintiffs allege negligence, negligent misrepresentation, breach of express warranty that the vehicles are safe and meet all safety requirements,[4] breach of the implied warranties of merchantability[5] and fitness for a particular purpose,[6] and violations of the Texas Deceptive Trade Practices–Consumer Protection Act.[7] They do not contend that the Gen–3 buckles made their vehicles worth less than they paid for them, and they expressly "do not seek damages for personal injury, property damage or death." They claim damages only for the cost of replacing the buckles with ones that are harder to unlatch, which they "believe[ ] to be not in excess of $75 per buckle", and any lost use while repairs are made, "believed not to exceed $500.00 per vehicle." Thus, if we assume four seatbelts per vehicle, plaintiffs claim no more than $2,400 for themselves and no more than $8 billion for the class.

DaimlerChrysler moved for summary judgment on the ground that the plaintiffs' pleadings failed to state a viable cause of action. The plaintiffs offered evidence of the defect they allege in the Gen–3 buckles. They contended that the buckle design violates a Federal Motor Vehicle Safety Standard requiring that a "[b]uckle release mechanism shall be designed to minimize the possibility of accidental release."[8] The plaintiffs offered evidence that the buckles failed "ball tests" used by the industry to determine the force required to press the release button, but they offered no evidence that there was any governmental requirement that the buckles pass such tests. They also offered evidence that DaimlerChrysler received fifty complaints documenting over one hundred instances when Gen–3 buckles unlatched, and that the buckles unlatched in two NHTSA crash tests and in crash tests conducted by the Canadian government and DaimlerChrysler itself, but they offered no evidence that any determination has ever been made that the buckles unlatched more easily than they should. The trial court denied DaimlerChrysler's motion. In certifying the class, the court found:

> Plaintiffs' claims are not based on any hypothetical defect in the Gen–3 buckle that may, or may not, manifest itself in

---

4. *See* Tex. Bus. & Com.Code § 2.313.

5. *Id.* § 2.314.

6. *Id.* § 2.315.

7. *Id.* §§ 17.41–.63.

8. 49 C.F.R. § 571.209, S4.1(e).

the future. Instead, Plaintiffs' allege that the sale of Gen–3 buckles breached warranties and consumer remedies because each buckle was sold in violation of federal standards, industry standards, and Defendant's internal standards and that each Gen–3 buckle has manifested this breach from the moment it was sold until the present.

The trial court certified two classes. One was for:

All United States resident persons (except residents of California or Nevada) who own or lease new vehicles, model year 1993–2002, manufactured and/or sold by Daimler/Chrysler and equipped with Gen–3 seat belt buckles ... [excluding] any person who has an action for damages for personal injury or death or property damage against Defendants.

The other class was identical except for the word "used" in place of "new". On appeal, DaimlerChrysler argued that the case should be dismissed because the plaintiffs had not sustained any legally cognizable injury and therefore lacked standing to assert their claims. Alternatively, DaimlerChrysler argued that the class should be decertified because the trial plan adopted by the trial court was flawed and incomplete, the plaintiffs were inadequate class representatives, and they had not satisfied the predominance, superiority, and manageability requirements for class certification contained in Rule 42(b)(3) of the Texas Rules of Civil Procedure. Specifically, DaimlerChrysler argued that the trial court would be required to apply the laws of 48 states and adjudicate issues peculiar to individual class members. The court of appeals rejected DaimlerChrysler's standing argument but agreed that the trial court had not fully examined what law should govern the class claims.[9] There it stopped; without addressing DaimlerChrysler's other arguments, the court reversed the class certification and remanded the case for further proceedings.[10]

We granted DaimlerChrysler's petition for review to consider its argument that the plaintiffs lack standing to assert their claims.

## II

■ The parties agree that the plaintiffs cannot succeed on any of their claims without showing they have suffered legally compensable injury. But the plaintiffs argue that they need not show that they can prove the requisite injury until after class certification has been decided and the trial court reaches the merits of their claims.[11] DaimlerChrysler argues that the claimed injury is so hypothetical, so iffy, that the plaintiffs do not have standing to assert it and the court does not have jurisdiction to hear it.[12] The issue is important because

9. 121 S.W.3d 862, 885–886 (Tex.App.-Corpus Christi 2003).

10. *Id.*

11. *See Intratex Gas Co. v. Beeson,* 22 S.W.3d 398, 404 (Tex.2000) ("Deciding the merits of the suit in order to determine the scope of the class or its maintainability as a class action is not appropriate.... However, in determining whether the class-certification requirements have been satisfied, the trial court may look beyond the pleadings."); *see also Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) ("In deter-

mining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of [the procedural rule governing class actions] are met." (quoting *Miller v. Mackey Int'l,* 452 F.2d 424 (5th Cir.1971))).

12. *See Texas Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 444 (Tex.1993) ("An opinion issued in a case brought by a party without standing is advisory because rather than remedying an actual or imminent harm, the judgment addresses only a hypothetical injury.").

courts must not decide hypothetical claims.[13] Practically speaking, the timing is important, because a disagreement over $2,400 is one thing and a disagreement over $8 billion is quite another.

A person who buys a defective product can sue for economic damages,[14] but the law is not well developed on the degree to which the defect must actually manifest itself before it is actionable. For example, in *Compaq Computer Corp. v. Lapray,* we observed that "the law in most states (including Texas) is unclear" on "whether to permit express warranty claims for unmanifested defects".[15] The plaintiffs here argue that this issue cannot be resolved until the trial court determines whether a class should be certified. Nor, they say, can the court consider at this stage whether the defect they allege in the Gen–3 seatbelt buckle has manifested itself sufficiently for them to recover damages on their other claims for negligence, negligent misrepresentation, breach of implied warranties, or DTPA violations.

But DaimlerChrysler does not argue here that the plaintiffs' claims cannot succeed (although that is certainly their position). Rather, it argues that whatever the plaintiffs' causes of action may require, they have not suffered the kind of injury to give them standing to invoke the trial court's subject-matter jurisdiction. If there is no injury sufficient for jurisdiction, surely there is no injury sufficient for a cause of action. But if the plaintiffs have no standing, the trial court has no more jurisdiction to deny their claims than it does to grant them. Without jurisdiction, the trial court should not render judgment that the plaintiffs take nothing; it should simply dismiss the case.[16]

The requirement in this State that a plaintiff have standing to assert a claim derives from the Texas Constitution's separation of powers among the departments of government, which denies the judiciary authority to decide issues in the abstract, and from the Open Courts provision, which provides court access only to a "person for an injury done him".[17] A court has no jurisdiction over a claim made by a plaintiff without standing to assert it.[18] For standing, a plaintiff must be personally aggrieved;[19] his alleged injury must be concrete and particularized,[20] ac-

---

13. *See id.*

14. *E.g. Plas–Tex, Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442, 443–445 (Tex.1989).

15. 135 S.W.3d 657, 679 (Tex.2004) (footnote omitted). *Cf. Collins v. DaimlerChrysler Corp.,* 894 So.2d 988 (Fla.Dist.Ct.App.2004) (holding that plaintiff's complaint that the value of her car was less because it was equipped with Gen–3 seatbelt buckles is actionable under the state consumer protection law even though the alleged defect has never manifest itself in an emergency or caused damages).

16. *See, e.g., Martinez v. Second Injury Fund of Tex.,* 789 S.W.2d 267, 277 (Tex.1990) (Hecht, J., dissenting) ("Rendition of judgment on the merits is inappropriate in an action over which the trial court lacks jurisdiction."); *West v. Brenntag Sw., Inc.,* 168 S.W.3d 327, 339 (Tex.App.-Texarkana 2005, pet. denied) ("Having found that West lacked standing to sue for negligence or nuisance, the judgment as to those claims is reversed and judgment is rendered that those claims be dismissed for want of jurisdiction. The judgment as to the remaining claims is reversed and judgment is rendered that West take nothing.").

17. *Texas Ass'n of Bus.,* 852 S.W.2d at 444; TEX. CONST. art. I, § 13 ("All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law.").

18. *Texas Ass'n of Bus.,* 852 S.W.2d at 444.

19. *Nootsie, Ltd. v. Williamson County Appraisal Dist.,* 925 S.W.2d 659, 661 (Tex.1996) ("A plaintiff has standing when it is personally aggrieved.").

20. *Brown v. Todd,* 53 S.W.3d 297, 305 (Tex. 2001) (stating that for a plaintiff to have

tual or imminent, not hypothetical.[21] A plaintiff does not lack standing simply because he cannot prevail on the merits of his claim; he lacks standing because his claim of injury is too slight for a court to afford redress.

We have drawn this distinction in a recent case, *M.D. Anderson Cancer Center v. Novak.*[22] Attorney Novak received a form letter from the M.D. Anderson Cancer Center soliciting donations and stating that "well over 50%" of its cancer patients "return home cured".[23] Novak did not contribute; instead, he sued the hospital on behalf of everyone who received the letter, alleging that the stated cure-rate was false and the letter therefore fraudulent.[24] This Court held that he lacked standing to assert his individual claim:

> Even if Novak was an intended victim of a "completed" mail fraud for purposes of governmental prosecution, he was not actually defrauded. His lack of any actual or threatened injury prevents him from being "personally aggrieved" such that he has any personal stake in the litigation. Therefore, Novak lacks standing as an individual. . . . [25]

It was irrelevant whether M.D. Anderson's fund-raising letter was false, or whether recipients might have been deceived into giving when they would not otherwise have done so. The point was that Novak was not himself deceived or injured, and therefore he did not have standing individually

to assert fraud. Accordingly, we dismissed the entire action for want of jurisdiction.[26]

*M.D. Anderson* is different from the present case in that once Novak decided the letter was false, he could never be deceived and therefore could never be injured, other than out of concern for others. In this case, the plaintiffs could accidentally unlatch their Gen–3 seatbelt buckles and subject themselves to harm, though that has never happened to two of them and the third is unsure. M.D. Anderson is important because it shows that standing, and the concrete injury it requires, is quite distinct from the merits of a claim and the injury required to prove it.

Two decisions from the Fifth Circuit illustrate this point. In *Rivera v. Wyeth–Ayerst Laboratories*, Rivera used Duract, a prescription painkiller manufactured by Wyeth.[27] Wyeth had instructed that the drug should not be used for more than ten days generally and not by anyone with preexisting liver conditions.[28] Over the course of a year, before Wyeth voluntarily withdrew Duract from the market, twelve users reportedly suffered liver failure.[29] Eleven of them had used the drug for more than ten days, and the twelfth had a history of liver disease.[30] Although Rivera suffered no physical or emotional harm herself, she sued for a refund of the purchase price on behalf of all other users of the drug who also had not been harmed,

---

standing he " 'must establish that he has a "personal stake" in the alleged dispute' and that the injury suffered is 'concrete and particularized' ", quoting *Raines v. Byrd*, 521 U.S. 811, 819, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997), citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).

**21.** *Texas Ass'n of Bus.*, 852 S.W.2d at 444.

**22.** 52 S.W.3d 704 (Tex.2001).

**23.** *Id.* at 706.

**24.** *Id.*

**25.** *Id.* at 707–708 (citations and emphasis omitted).

**26.** *Id.* at 711.

**27.** 283 F.3d 315, 316–317 (5th Cir.2002).

**28.** *Id.* at 316–317.

**29.** *Id.* at 317.

**30.** *Id.*

alleging that the product was defective.[31] She sued only for breach of an implied warranty of merchantability and sought only economic damages.[32] The court concluded that the kind of injury Rivera alleged did not give her standing to sue.[33] Accordingly, it dismissed the action for want of jurisdiction.

Contrast *Rivera* with *Cole v. General Motors Corp.*[34] There, GM determined that a defect in side-impact-air-bag sensing modules would improperly trigger inflation. As the court explained:

> GM sent a voluntary recall notice to all DeVille record owners and lessees explaining that GM
>
>> has decided that a defect which relates to motor vehicle safety exists and may manifest itself in your 1998 or 1999 model year Cadillac DeVille. [GM] ha[s] learned of a condition that can cause the side impact air bags in your car to deploy unexpectedly, without a crash, as you start your car or during normal driving.
>
> GM indicated that it had received 306 reports of inadvertent deployment out of approximately 224,000 affected vehicles.[35]

Three plaintiffs sued for economic damages because repairs to the vehicles were unreasonably delayed. GM argued that they lacked standing, based on *Rivera*. The court disagreed.[36]

An important difference between these two cases is that the *Cole* plaintiffs alleged a defect that would cause GM's side-impact air bags to deploy by itself unexpectedly during normal operation, something GM conceded in its voluntary recall, while the *Rivera* plaintiffs alleged a defect in medication which had caused injury only when taken by someone contrary to Wyeth's instructions. In *Cole*, injury was a matter of time; in *Rivera*, it might never happen. The air bags in Cole's vehicle might deploy improperly regardless of what she did, just as they might in the other vehicles in which they were installed. Taking Duract had not hurt Rivera, and there was almost no chance that the defect she alleged in the drug ever would injure her, given that she was fully aware of the restrictions on its use.

■ Any possibility of injury to the plaintiffs in the present case is even more remote than it was in *Rivera*. There, Wyeth received twelve complaints over a year before it voluntarily withdrew the drug from the market. Here, according to the plaintiffs themselves, DaimlerChrysler received only fifty complaints from ten million vehicle owners and lessees over ten years—five per year, one for every 200,000 owners and lessees. By comparison, in *Cole*, GM received 306 reports in two years, one for every 732 owners and lessees. In any event, evidence of such complaints cannot prove defect.[37] The plaintiffs contend that ball tests showed how easily the Gen–3 buckle release button could be pressed and that crash tests showed that the buckle could somehow be unlatched, but there is nothing to indicate that the design of the buckle failed to minimize the risk of accidental release versus the risk of non-use so as to pose any concrete threat of injury to the plaintiffs.

**31.**  *Id.* at 317, 319–320.

**32.**  *Id.* at 319–320.

**33.**  *Id.* at 321–322.

**34.**  484 F.3d 717 (5th Cir.2007).

**35.**  *Id.* at 718–719.

**36.**  *Id.* at 722–723.

**37.**  *Nissan Motor Co. v. Armstrong,* 145 S.W.3d 131, 140 (Tex.2004) ("we have never held that mere claims of previous accidents can prove a product is defective").

The dissent criticizes us for assuming that Texas law governs, but it unquestionably does—over the issue of standing, a part of subject-matter jurisdiction, which is the only issue we decide. The dissent argues that we have improperly focused our standing analysis on the plaintiffs' claims rather than on the plaintiffs themselves, but that is incorrect. We do not rule out the possibility that somewhere there may be owners or lessees of vehicles with Gen–3 seatbelt buckles that can allege concrete injury. Our focus is on Inman, Castro, and Wilkins, and they have not shown that they can. The dissent argues that standing requires only, one, a real controversy that, two, will be determined. Those are requirements for standing,[38] but so is concrete injury, because if injury is only hypothetical, there is no real controversy.[39] The dissent argues essentially that our conclusion that the plaintiffs lack standing is nothing more than a summary judgment on the merits of their claims, that we have "equate[d] standing with an unsuccessful claim",[40] but this is simply wrong. We agree that the allegations in *Cole* gave the plaintiff standing, regardless of whether she could prevail on the merits of her claim, and even though the Fifth Circuit denied class certification.[41] We do not render judgment that the plaintiffs take nothing, as we would if their claims failed on the merits; we dismiss the case for want of jurisdiction. We do not decide the degree to which a defect must manifest itself in a product before a warranty is breached. Standing in this case is a separate inquiry, just as it was in *M.D. Anderson* and *Rivera*.

■ Both of those cases show that when a claim of injury is extremely remote, the jurisdictional inquiry cannot be laid aside in an expectation that the claimant will also lose on the merits. A court that decides a claim over which it lacks jurisdiction violates the constitutional limitations on its authority, even if the claim is denied. As the United States Supreme Court has warned, the denial of a claim on the merits is not an alternative to dismissal for want of jurisdiction merely because the ultimate result is the same because the assertion of jurisdiction "carries the courts beyond the bounds of authorized judicial action and thus offends fundamental principles of separation of powers." [42]

The dissent charges that our decision "suggests a visceral distaste of class actions". We disagree. We simply think that the rights of ten million vehicle owners and lessees across the United States should not be adjudicated in an action brought by three plaintiffs who cannot show more than the merest possibility of injury to themselves. To hold that Inman, Castro, and Wilkins have standing would drain virtually all meaning from the requirements that a plaintiff must be "personally aggrieved" and that his injury must be "concrete" and "actual or imminent".

\* \* \* \* \* \*

■ If the named plaintiffs in a putative class action do not have standing to assert their own individual claims, the entire actions must be dismissed.[43] Accord-

---

**38.** *Austin Nursing Ctr., Inc. v. Lovato,* 171 S.W.3d 845, 849 (Tex.2005); *Nootsie, Ltd. v. Williamson County Appraisal Dist.,* 925 S.W.2d 659, 662 (Tex.1996); *Texas Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 446(Tex.1993).

**39.** *Texas Ass'n of Bus.,* 852 S.W.2d at 444.

**40.** *Ante* at 313.

**41.** 484 F.3d 717, 730 (5th Cir.2007).

**42.** *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998).

**43.** *M.D. Anderson Cancer Ctr. v. Novak,* 52 S.W.3d 704, 711 (Tex.2001) ("Accordingly, if the named plaintiff lacks individual standing, the court should dismiss the entire [class action] suit for want of jurisdiction.").

ingly, the judgment of the court of appeals is reversed and the case is dismissed for want of jurisdiction.

Chief Justice JEFFERSON, joined by Justice O'NEILL, Justice GREEN, and Justice JOHNSON, dissenting.

Chief Justice JEFFERSON, joined by Justice O'NEILL, Justice GREEN, and Justice JOHNSON, dissenting.

> In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of [the procedural rule governing class actions] are met.

*Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) (quoting *Miller v. Mackey Int'l,* 452 F.2d 424, 427 (5th Cir.1971)).[1]

This case comes to us on appeal of a trial court's order certifying a nationwide [2] class action against DaimlerChrysler. The trial court had previously denied Daimler-Chrysler's motion for summary judgment, which asserted that the class allegations failed to state a cause of action.[3] In the court of appeals, Chrysler—for the first time—asserted that the plaintiffs lacked standing to sue. Today, the Court agrees and, in doing so, improperly equates standing with the merits of the plaintiffs' claim. Because this contravenes fundamental tenets of the standing doctrine, our rules of procedure, and the statute governing interlocutory appeals, I respectfully dissent.

## I

### Standing

The Court never reaches the choice-of-law issue, instead dismissing the entire action based on its conclusion that the plaintiffs lack standing. But standing "focuses on the party seeking to get his complaint before a ... court and not on the issues he wishes to have adjudicated." *Simon v. E. Ky. Welfare Rights Org.,* 426 U.S. 26, 38, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976) (quoting *Flast v. Cohen,* 392 U.S. 83, 99, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968)). Today the Court inverts traditional standing doctrine, focusing not on the party but on the issues to be adjudicated.

Putative class representatives, like any other plaintiffs, must demonstrate standing to sue. *M.D. Anderson Cancer Ctr. v. Novak,* 52 S.W.3d 704, 710 (Tex.2001). Here, each named plaintiff has alleged a personal interest in the case and a type of injury that is generally redressable under Texas law, which requires *only "(1)* a real controversy between the parties, that (2) will be actually determined by the judicial declaration sought." *Austin Nursing Ctr., Inc. v. Lovato,* 171 S.W.3d 845, 849 (Tex. 2005) (quoting *Nootsie, Ltd. v. Williamson County Appraisal Dist.,* 925 S.W.2d 659, 662 (Tex.1996)); *see also Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 45

---

**1.** Texas Rule of Civil Procedure 42 is patterned after Federal Rule of Civil Procedure 23; consequently, federal decisions and authorities interpreting current federal class action requirements are persuasive authority. *Sw. Ref. Co., Inc. v. Bernal,* 22 S.W.3d 425, 433 (Tex.2000) (citations omitted).

**2.** In fact, the case is nearly nationwide, encompassing forty-eight states. California and Nevada residents were excluded from the proposed class definition.

**3.** The motion nowhere asserts that the trial court lacked jurisdiction based on standing and seeks not dismissal, but a take-nothing judgment. Rather, DaimlerChrysler moved for summary judgment on the pleadings, alleging that the plaintiffs sustained no damages, an essential element of each claim, and that DaimlerChrysler was therefore entitled to judgment on the merits. DaimlerChrysler later supplemented its motion with excerpts from the class representatives' depositions. The trial court denied the motion.

L.Ed.2d 343 (1975)(noting that "[f]or purposes of ruling on a motion to dismiss for want of standing, ... reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party"); *Brown v. Todd,* 53 S.W.3d 297, 305 n. 3 (Tex.2001) ("Because standing is a component of subject matter jurisdiction, we consider [it] as we would a plea to the jurisdiction, construing the pleadings in favor of the plaintiff."). As both of those conditions are satisfied here, the class representatives have standing to prosecute their claims.

As the Court notes, in most states (including Texas), the law on warranty claims based on unmanifested defects is unclear. 252 S.W.3d at 304 (citing *Compaq Computer Corp. v. Lapray,* 135 S.W.3d 657, 679 (Tex.2004)). Absent a full record, in which the claim's contours can be thoroughly vetted, I am not prepared to say the plaintiffs' claims of economic injury are conclusively unsound. At least one court has distinguished between no-injury product liability claims, which are based in tort, and warranty claims based on unmanifested defects, which are contractually based. As the Fifth Circuit noted in a class-action case in which boat owners sought benefit of the bargain damages:

> The key distinction between this case and a "no-injury" product liability suit is that the Coghlans' claims are rooted in basic contract law rather than the law of product liability: the Coghlans assert they were promised one thing but were given a different, less valuable thing. The core allegation in a no-injury product liability class action is essentially the same as in a traditional products liability case: the defendant produced or sold a

defective product and/or failed to warn of the product's dangers. The wrongful act in a no-injury products suit is thus the placing of a dangerous/defective product in the stream of commerce. In contrast, the wrongful act alleged by the Coghlans is Wellcraft's failure to uphold its end of their bargain and to deliver what was promised. The striking feature of a typical no-injury class is that the plaintiffs have either not yet experienced a malfunction because of the alleged defect or have experienced a malfunction but not been harmed by it. Therefore, the plaintiffs in a no-injury products liability case have not suffered any physical harm or out-of-pocket economic loss. Here, the damages sought by the Coghlans are not rooted in the alleged defect of the product as such, but in the fact that they did not receive the benefit of their bargain.

*Coghlan v. Wellcraft Marine Corp.,* 240 F.3d 449, 455 n. 4 (5th Cir.2001).

The Fifth Circuit also noted that "the determination that there has been no injury in [cases like this] must be an evidentiary one." *Id.* at 455 (holding that district court acted prematurely by dismissing case on the pleadings). Most courts recognize that the failure to state a cause of action is best addressed outside the context of class certification. Indeed, one court has noted that "the substantive question of whether the implied warranty of merchantability protects against an unanticipated diminution in secondary market values" is better reserved for "another, more appropriate time—i.e., outside the context of rulings on Rule 23 motions for class certification." *Carlson v. Gen. Motors Corp.,* 883 F.2d 287, 297 (4th Cir. 1989)[4]; *see also Briehl v. Gen. Motors*

---

4. That court noted:
   In *Walsh v. Ford Motor Co.,* 106 F.R.D. 378 (D.D.C.1985), for example, the trial court certified an "all owners" class of plaintiffs, notwithstanding the defendant's protestation that many of the class members' cars had "performed as warranted and therefore [were] merchantable." *Id.* at 396.

*Corp.*, 172 F.3d 623, 628 n. 8 (8th Cir.1999) (noting that, in evaluating the trial court's ruling on a motion to dismiss for failure to state a claim, class certification decisions are "singularly unhelpful since none of the cases address[ ] the substantive question of whether a plaintiff claiming only lost resale value damages states a valid claim" and noting that most courts "explicitly reserve[ ] the question for a decision outside the context of a Rule 23 motion to certify a class") (citations and quotations omitted). Not only that, but because Rule 42, like its federal counterpart, requires certification "at an early practicable time," Tex.R. Civ. P. 42(c)(1)(A); *see also* Fed.R.Civ.P. 23(c)(1)(A), trial courts will generally face class certification decisions before a case is ripe for summary judgment. *See Curtin v. United Airlines, Inc.*, 275 F.3d 88, 92 (D.C.Cir.2001); *Cowen v. Bank United of Tex., FSB*, 70 F.3d 937, 941 (7th Cir.1995); *see also* 7B Charles Alan Wright, Arthurr. Miller & Mary Kay Kane, Federal Practice and Procedure (3d ed.2005) § 1798 (noting that, in class action cases, trial courts should be "very careful" in ruling on early summary judgment motions "to make certain that all the available evidence is before [them]").

The Court notes—accurately—that two similar class actions have been brought in other states "without success." 252 S.W.3d at 300. But that is only part of the story. While both cases involved putative class actions involving the Gen–3 buckles, neither was decided on the basis of standing. The Quacchia court held that common issues did not predominate, and thus the trial court did not abuse its discretion in refusing to certify the class. *Quacchia v. DaimlerChrysler Corp.*, 122 Cal.App.4th 1442, 19 Cal.Rptr.3d 508, 515 (2004). Similarly, in *Hiller*, the trial court found that class certification was inappropriate, as class members had not demonstrated predominance. *Hiller v. DaimlerChrysler Corp.*, No. 02–681, 2007 Mass.Super. LEXIS 442, 2007 WL 3260199, *4–5 (Mass.Super.Ct. Sept. 25, 2007). But neither court held, as this Court does, that trial courts lacked subject matter jurisdiction over the plaintiffs' claims. Indeed, in concluding that a plaintiff suing for allegedly defective Gen–3 buckles stated a cognizable claim, a Florida court noted:

> This case turns on a relatively simple question, at least as to damages—Is a car with defective seatbelt buckles worth less than a car with operational seatbelt buckles? Common sense indicates that it is, but, at this stage of the case, we need not decide that issue. Rather, we

The court specifically noted, however, that it was certifying the class solely on the basis of the "commonality" of the prospective members' interests, and that it was *not* determining separately whether the plaintiffs had stated a "viable" cause of action for breach of the implied warranty of merchantability. *Id.* at 397. Essentially the same can be said for each of the remaining cases on which the plaintiffs principally rely. *See In re Cadillac V8–6–4 Class Action*, 93 N.J. 412, 461 A.2d 736, 743 (1983) (approving certification of "all owners" class where plaintiffs charged breach of implied warranty of merchantability on account of "common defect"; court holds that allegation of "loss-of-bargain" dam-

ages is sufficient to state cause of action, but relies on cases where such loss occurred as result of manifest defects in *plaintiffs'* cars); *Landesman v. General Motors Corp.*, 356 N.E.2d 105, 107–08, 42 Ill. App.3d 363, 1 Ill.Dec. 105, 107–08 (1st Dist.1976) (court certified class of plaintiffs claiming damages partly attributable to diminished resale value, but specifically declined to decide question of whether allegations supported viable cause of action); *Anthony v. General Motors Corp.*, 33 Cal. App.3d 699, 109 Cal.Rptr. 254 (2d Dist. 1973) ("all owners" class certification; no discussion of viability of underlying cause of action).
*Carlson*, 883 F.2d at 297.

only determine that Collins is entitled to go forward with her case.

*Collins v. DaimlerChrysler Corp.*, 894 So.2d 988, 989–90 (Fla.Dist.Ct.App.2004) (holding that Florida consumer protection statute did not require that "a defect manifest itself by failing to operate in an emergency or by causing injury"—actual injury in form of insufficient product value was enough, and whether "allegations have merit remain[ed] to be decided").

The Court relies in part on *Rivera v. Wyeth–Ayerst Labs.*, 283 F.3d 315 (5th Cir.2002). But the Fifth Circuit's recent decision in *Cole v. General Motors Corp.*, 484 F.3d 717 (5th Cir.2007), shows why *Rivera* is inapposite. In *Cole*, Cadillac DeVille owners sued General Motors, alleging that the DeVilles had a defect that caused the airbags to deploy inadvertently and that GM had failed to repair or replace the airbags within a reasonable time. None of the class plaintiffs had actually experienced an inadvertent deployment, and GM (which had previously recalled the vehicles) challenged their standing to sue. *Cole*, 484 F.3d at 719–20. The Fifth Circuit, distinguishing *Rivera*, concluded that the plaintiffs had standing to pursue their claims:

> In *Rivera*, purchasers of a prescription drug sought recovery of economic damages after learning that the manufacturer had withdrawn the drug from the market because the drug had caused liver damage to other patients. We concluded that the *Rivera* plaintiffs lacked standing because they described their claim as emanating from the drug manufacturer's failure to warn and sale of a defective product, but the plaintiffs did not claim that the drug had caused them any physical or emotional injury. Although the plaintiffs quantified their injury in terms of economic damages, we concluded that merely asking for economic damages failed to establish an injury in fact because the plaintiffs nev-

er defined the source of their economic injury. The plaintiffs could not assert benefit-of-the-bargain damages because they had no contract with the manufacturer. Due to these factors, we determined that the injuries that the plaintiffs alleged were suffered not by them, but rather, by the non-party plaintiffs suffering liver damage. And we referred to the *Rivera* plaintiffs' claim as a "no-injury products liability" suit.

> *Rivera* is distinguishable from the instant case. In *Rivera*, the plaintiffs sought damages for potential physical injuries; because they never suffered actual physical injuries, they could only allege injuries that were suffered by non-parties. The *Rivera* plaintiffs did not assert economic harm emanating from anything other than potential physical harm. Here, although plaintiffs do not assert physical injuries (either their own or those of other persons), they do assert their own actual economic injuries. Plaintiffs allege that each plaintiff suffered economic injury at the moment she purchased a DeVille because each DeVille was defective. Plaintiffs further allege that each plaintiff suffered economic injury arising from GM's unreasonable delay in replacing their defective [airbags]. Plaintiffs seek recovery for their actual economic harm (e.g., overpayment, loss in value, or loss of usefulness) emanating from the loss of their benefit of the bargain. Notably in this case, plaintiffs may bring claims under a contract theory based on the express and implied warranties they allege. ***Whether recovery for such a claim is permitted under governing law is a separate question; it is sufficient for standing purposes that the plaintiffs seek recovery for an economic harm that they allege they have suffered.*** See *Parker v. District of Columbia*, 478 F.3d 370, 377(D.C.Cir.2007) ("The Su-

preme Court has made clear that when considering whether a plaintiff has Article III standing, a federal court must assume arguendo the merits of his or her legal claim.") (citing *Warth v. Seldin*, 422 U.S. 490, 501–02, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). ***We therefore conclude that plaintiffs have established a concrete injury in fact and have standing to pursue this class action.***

*Id.* at 722–23 (emphasis added) (citations omitted).[5]

This Court's attempt to distinguish *Cole* reveals the extent to which it has misread that case. In its discussion of *Cole* and *Rivera*, the Court asserts that:

> An important difference between these two cases is that the *Cole* plaintiffs alleged a defect that would cause GM's side-impact air bags to deploy by itself unexpectedly during normal operation, something GM conceded in its voluntary recall, while the *Rivera* plaintiffs alleged a defect in medication which had caused injury only when taken by someone contrary to Wyeth's instructions. In *Cole*, injury was a matter of time; in *Rivera*, it might never happen. The air bags in Cole's vehicle might deploy improperly regardless of what she did, just as they might in the other vehicles in which they were installed. Taking Duract had not hurt Rivera, and there was almost no chance that the defect she alleged in the drug ever would injure her, given that she was fully aware of the restrictions on its use.

Any possibility of injury to the plaintiffs in the present case is even more remote than it was in *Rivera*. 252 S.W.3d at 306. Based on this description, one would think that *Cole* turned on the likelihood of personal injury to the plaintiffs. As seen above, however, the *Cole* panel distinguished *Rivera* on very different grounds. The Fifth Circuit found that the plaintiffs in *Cole* had standing not because unexpected air bag deployment was inevitable[6] or otherwise more likely to cause harm to the plaintiffs than the drug in *Rivera*, but because the plaintiffs alleged that the defect—and GM's failure to cure it in a reasonable time—deprived them of the benefit of their bargain. The plaintiffs here, like those in *Cole*, have made a claim for economic damages—replacement cost and loss of use—arising from, among other things, an alleged breach of warranty. This is sufficient to establish the plaintiffs' standing, *Cole*, 484 F.3d at 722–23, and neither the Court's dim view of their ability to prove a defect nor its disdain for their bid to adjudicate the rights of "ten million vehicle owners and lessees across the nation" in Nueces County deprives them of it. 252 S.W.3d at 307.

Similarly, the Court's analogy to *M.D. Anderson* misses the mark. In that case, we held that a plaintiff who was never defrauded lacked standing to sue on behalf of those who were. *See M.D. Anderson Cancer Ctr. v. Novak*, 52 S.W.3d 704, 707–11 (Tex.2001). In this case, by contrast, each of the plaintiffs purchased a vehicle equipped with Gen–3 buckles, and they

---

**5.** Ultimately, the court concluded that the district court abused its discretion in certifying the class, as the plaintiffs "failed to adequately address, much less 'extensively analyze,' the variations in state law ... and the obstacles they present to predominance." *Cole*, 484 F.3d at 730.

**6.** It is far from clear that injury to the *Cole* plaintiffs was merely "a matter of time." In that case, GM indicated that "it had received 306 reports of inadvertent deployment out of approximately 224,000 affected vehicles." *Cole*, 484 F.3d at 719. Further, "[a]ccording to GM ... the likelihood of inadvertent deployment decreased significantly over time." *Id.* at 720 n. 2.

allege economic damages equal to the cost of replacing the defective buckles. Their injury—as alleged—is complete.[7] Perhaps *M.D. Anderson* would be applicable if the plaintiffs did not own the vehicles but were suing on behalf of those who did, but that's not the case here. Taking their pleadings as true, as we must,[8] it is the plaintiffs— not some unrelated third parties—who have suffered an economic injury. For standing purposes, they need not show that the seat belts "fail[ed] to operate in an emergency or . . . caus[ed] injury." *Collins*, 894 So.2d at 990. Their injury, as alleged, is manifest today, because the economic value of the product they purchased is not as warranted.[9]

The Court correctly notes that standing is a prerequisite to subject matter jurisdiction. 252 S.W.3d 304. It may be raised not only by a plea to the jurisdiction, but by any number of procedural methods, including summary judgment. *Bland I.S.D. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). This rule facilitates review of subject matter jurisdiction, which is so important that it can be raised for the first time on appeal. It makes little sense, however, to stretch this reasoning to permit review of ordinary merits-based issues that are raised in a motion for summary judgment.[10] We have never before held that any time a plaintiff's claims fail as a matter of law, the trial court is deprived of jurisdiction.[11]

Moreover, crafting new standing rules creates a host of problems, not the least of which involves collateral attacks on judgments. Without standing, a court lacks subject matter jurisdiction to hear the case. *Id.* at 553–54; *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex.1993). Because "a judgment will never be considered final if the court lacked subject-matter jurisdiction," *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 76 (Tex. 2000), the Court's holding "opens the way to making judgments vulnerable to delayed attack for a variety of irregularities that perhaps better ought to be sealed in a judgment." Restatement (Second) of Judgments § 12 cmt. b (1982); *see also Dubai*, 12 S.W.3d at 76. Additionally, by holding that standing requires the plaintiff

---

**7.** The court of appeals recognized this, noting that " '[r]isk of injury' [was] an inaccurate characterization" of the alleged harm. 121 S.W.3d at 879. Rather, the court noted that "[e]ach plaintiff claim[ed] injury in the form of insufficient product value" and "[o]n the basis of these allegations, each plaintiff claims a concrete and particularized injury in fact sufficient to confer standing to sue." *Id.*

**8.** *Brown*, 53 S.W.3d at 305 n. 3.

**9.** The Court asserts that the plaintiffs "do not contend that the Gen–3 buckles made their vehicles worth less than they paid for them." While the plaintiffs may not use these exact words, they do allege concrete economic harm stemming from breach of express and implied warranties. *See* Tex. Bus. & Comm.Code § 2.714(b); *Nobility Homes of Tex., Inc. v. Shivers*, 557 S.W.2d 77, 78 n. 1 (Tex.1977) (stating that "direct economic loss may be 'out of pocket'-the difference in value between what is given and received—or 'loss of bargain'—the difference between the value of what is received and its value as represented. Direct economic loss also may be measured by costs of replacement and repair.") (citations omitted).

**10.** The Court states, in response to the argument that it is incorrectly considering the merits in determining standing, that "[w]e do not render judgment that the plaintiffs take nothing, as we would if their claims failed on the merits; we dismiss the case for want of jurisdiction." 252 S.W.3d 307. This is quite true, but utterly non-responsive. The troubling part of the Court's opinion is, of course, not the disposition in and of itself, but how it was reached.

**11.** Indeed, standing is typically challenged in a plea to the jurisdiction, which is a "dilatory plea, the purpose of which is to defeat a cause of action *without regard to whether the claims asserted have merit.*" *Bland*, 34 S.W.3d at 554 (emphasis added).

to establish the validity of its claim, and because standing may be raised for the first time on appeal, a class-action defendant could—on interlocutory appeal of a certification order—seek dispositive rulings on all of the plaintiffs' claims, even without first asking the trial court to determine the merits of the claims and absent any sort of evidentiary record. Defendants who lose at trial may now, under the guise of standing, raise affirmative defenses that were never pleaded in, or considered by, the trial court.

We have recognized that "[i]f ... no class member can state a viable claim, dispositive issues should be resolved by the trial court before certification is considered." *State Farm Mut. Auto. Ins. Co. v. Lopez*, 156 S.W.3d 550, 557 (Tex.2004). Here the trial court did precisely that, by denying DaimlerChrysler's summary judgment motion, which alleged that the class members had not suffered damages, an essential element of their claims. Even if DaimlerChrysler were entitled to summary judgment on the grounds asserted, the trial court's denial of the motion, a patently interlocutory ruling, is referable to the merits rather than the plaintiffs' standing to assert their claims. The Legislature in 2003 enlarged our interlocutory appellate jurisdiction in class action cases, by (among other things) broadening our conflicts jurisdiction, but it did not confer appellate jurisdiction over all interlocutory orders. Instead, the Legislature confined that jurisdiction in class actions to specific cases. *See, e.g.*, TEX. CIV. PRAC. & REM.CODE § 26.051 (permitting interlocutory appellate review—"as part of an appeal of the order certifying the class action"—of pleas to the jurisdiction in class action cases in which it is alleged that a state agency has exclusive or interlocutory jurisdiction). Nor did this Court enact rules governing dispositive motions in class action cases as part of the Legislature's mandate that we "adopt rules to provide for the fair and

efficient resolution of class actions." *Id.* § 26.001(a); *see also* Order of Supreme Court of Texas Adopting Amendments to Rules of Civil Procedure (Oct. 9, 2003, eff.Jan.1, 2004) (available at http://www.supreme.courts.state.tx.us/MiscDocket/03/03916000.PDF).

We require that trial courts, in certifying or denying certification, comply with the detailed requirements of Rule 42. That rule requires, among other things, that the court delineate the elements of each claim or defense asserted in the pleadings; any issues of law or fact common to the class members; any issues affecting only individual class members; those issues that will be the object of most of the efforts of the litigants and the court; other available methods of adjudication; why common issues do or do not predominate; why a class action is or is not superior; and how class and individual claims will be tried in a manageable, time efficient manner. TEX.R. CIV. P. 42(c)(1)(D). Moreover, trial courts must conduct a "rigorous analysis" before ruling on class certification to determine "whether all prerequisites to class certification have been met." *Bernal*, 22 S.W.3d at 435.

But we have never before held that if class representatives cannot prove their case at the class-certification stage, the trial court lacks jurisdiction. While "[t]he court may require plaintiff to supplement the pleadings with outside material in order to determine whether to certify [a class action] .... this does not mean that the litigant bringing the action as a representative must establish the merits of the case before a preliminary determination of the class-action question can be made." 7B WRIGHT, MILLER AND KANE, FEDERAL PRACTICE AND PROCEDURE § 1798. Indeed "although a preliminary evidentiary hearing may be utilized [prior to class certification], that hearing is directed toward examining the underlying facts to determine

whether they are susceptible to common proof and is not to determine the probability of success on the merits." *Id.* The class action is "a procedural device intended to advance judicial economy by trying claims together that lend themselves to collective treatment," but "[p]rocedural devices may 'not be construed to enlarge or diminish any substantive rights or obligations of any parties to any civil action.'" *Henry Schein, Inc. v. Stromboe,* 102 S.W.3d 675, 693 (Tex.2002) (quoting Tex.R. Civ. P. 815).

We have followed the United States Supreme Court's directive in *Eisen,* holding that "[d]eciding the merits of the suit in order to determine the scope of the class or its maintainability as a class action is not appropriate." *Intratex Gas Co. v. Beeson,* 22 S.W.3d 398, 404 (Tex.2000) (citing *Eisen,* 417 U.S. at 177, 94 S.Ct. 2140). Prior to *Eisen,* the Fifth Circuit held that, in determining whether a purchaser's action against an issuer for alleged violations of the securities law could be maintained as a class action, the trial court improperly considered whether the petition stated a cause of action or whether the purchaser would succeed on the merits. The Fifth Circuit vacated the order denying class-action status and remanded the case, stating:

> The determination whether there is a proper class does not depend on the existence of a cause of action. A suit may be a proper class action, conforming to Rule 23, and still be dismissed for failure to state a cause of action. Rule 23 delineates the scope of inquiry to be exercised by a district judge in passing on a class action motion. Nothing in

that Rule indicates the necessity or the propriety of an inquiry into the merits. Indeed, there is absolutely no support in the history of Rule 23 or legal precedent for turning a motion under Rule 23 into a Rule 12 motion to dismiss or a Rule 56 motion for summary judgment by allowing the district judge to evaluate the possible merit of the plaintiff's claims at this stage of the proceedings. Failure to state a cause of action is entirely distinct from failure to state a class action.

*Miller v. Mackey Int'l, Inc.,* 452 F.2d 424, 427–28 (5th Cir.1971) (citations omitted). Even if we were to change course and disavow *Eisen,* the better practice would be to do so through our rulemaking procedure. Several commentators have suggested just such a solution with regard to the Federal Rules of Civil Procedure. *See, e.g.,* Robert G. Bone and David S. Evans, *Class Certification and the Substantive Merits,* 51 DUKE L.J. 1251, 1254–55 (2002)(submitting that Fed.R.Civ.P. 23 be amended to require preliminary merits-related inquiries in class-action cases); Geoffrey C. Hazard, Jr., *Class Certification Based on Merits of the Claims,* 69 Tenn. L.Rev. 1, 4 (2001) (proposing amendment to Rule 23 to permit adjudication of the merits of class claims prior to full-fledged certification); Bartlett H. McGuire, *The Death Knell for Eisen: Why the Class Action Analysis Should Include an Assessment of the Merits,* 168 F.R.D. 366 (1996) (advocating amendment to Rule 23 so that an assessment of the merits would be included in the Rule 23(b)(3) analysis of the superiority of class action treatment).[12] After all, Eisen was based in

**12.** The Advisory Committee on the (federal) Civil Rules "also considered, but did not propose for formal review, a new provision of Rule 23(b)(3) that would have required a preliminary hearing on the merits prior to certification." Deborah R. Hensler et al., Class

Action Dilemmas: Pursuing Public Goals for Private Gain 500 n. 2 (2000). That provision "encountered opposition from both plaintiff and defense bars." *Id.* As one commentator has noted:

part on the absence of any provision in the Federal Rules of Civil Procedure that would "give[ ] a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." *Eisen*, 417 U.S. at 177, 94 S.Ct. 2140. But even such a reform would not go as far as the Court does here—stripping trial courts of jurisdiction if a claim lacks merit. Because the plaintiffs have standing, the trial court has subject matter jurisdiction, and the Court errs in concluding otherwise.

## II

### Choice of Law

A threshold question in any appellate review of an order certifying a multistate class action must be an analysis of whose law governs the class claims. *See Compaq*, 135 S.W.3d at 672. In this case, the trial court certified a multistate class but did not perform a choice-of-law analysis, concluding that it was unnecessary.[13] Noting this deficiency, the court of appeals held that "the trial court still ha[d] significant work to do on choice-of-law issues" and that our decision in *Henry Schein* "compel[led] reversal" of the class certification order on that basis. 121 S.W.3d at 886. After the court of appeals issued its judgment in this case, we decided *Compaq*, in which we mandated a detailed choice-of-law analysis in multistate class actions like this one, and we held that the lower courts erred by failing to conduct such an analy-

sis. *Compaq*, 135 S.W.3d at 673 (noting that the lower "courts never assessed the substance of other states' laws but instead concluded that the theory was sound under Texas law. A proper review would have analyzed the relevant law of each state and the variations among states.").

We have recognized that "[i]n the context of a nationwide class action, the determination of the applicable substantive law is of paramount importance. If the court does not know which states' laws must be applied, it cannot determine whether variations in the applicable laws would defeat predominance in a [Rule 42](b)(3) class action...." *Id.* at 672. Moreover, "[i]f the laws of fifty-one jurisdictions apply in [a] class action, the variations in the laws of the states and District of Columbia 'may swamp any common issues and defeat predominance.'" *Id.* (quoting *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 741 (5th Cir. 1996)).

It is settled that in reviewing a class certification order, we must evaluate "'the claims, defenses, relevant facts, and applicable substantive law.'" *Bernal*, 22 S.W.3d at 435 (quoting *Castano*, 84 F.3d at 744). In so doing, we have required "trial courts [to] abandon the practice of postponing choice-of-law questions until after certification, *as courts can hardly evaluate the claims, defenses, or applicable law without knowing what that law is.*" *Compaq*, 135 S.W.3d at 672 (citing *Tracker Marine, L.P. v. Ogle*, 108 S.W.3d 349, 351–52 (Tex.App.-Houston [14th Dist.] 2003, no

---

Defendants were torn between the attraction of drawing trial judges' attention to the merits of proposed class actions and the possibility that such an early merits determination would simply provide more opportunity for adversarial procedure at a time when the record had not yet been sufficiently developed to support a sound judicial assessment. Defendants' disagreement among themselves on the issue of a preliminary merits determination subse-

quently led the Advisory Committee to abandon this proposal.
*Id.* at 44 n. 103.

**13.** The class certification order stated that "[a] class certification order need not address choice of law.... In the absence of a proper choice of law motion, the Court will continue to presume, as it is entitled to presume, that the law of other jurisdictions is the same as Texas law."

pet.)) (emphasis added); *see also Spence v. Glock*, 227 F.3d 308, 313 (5th Cir.2000) (holding that "the district court is required to know which law will apply before it makes its predominance determination"); *Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 441 (Tex.2007). In light of our recent cases on this issue, the court of appeals correctly held that the case must be remanded to the trial court for further proceedings.

## III

### Conclusion

Proposals to modify class action procedure present serious questions of policy. Standing is different. It implicates a court's fundamental power to adjudicate a claim, rather than an assessment of whether the claim will ultimately succeed. Today, the Court conducts an extraordinary and unworkable reading of both pleading and precedent to conclude that the plaintiffs "lack[s] standing because [their] claim of injury is too slight for a court to afford redress." 252 S.W.3d at 305. We have never before stretched the doctrine this far. The Court's opinion reveals a visceral distaste for class actions, *see Mejdrech v. Met–Coil Sys. Corp.*, 319 F.3d 910, 912 (7th Cir.2003), but that distaste should not upend our substantive law of standing and subject matter jurisdiction which, even more than the right of trial by jury, is fundamental to our system of justice. I would affirm the court of appeals' judgment.