COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS

| | | |
|---|---|---|
| CARLOS DIAZ DE LEON, DANIEL MARQUEZ, KIMO SYLVA, and GABRIEL MORALES, | § § § | No. 08-10-00348-CV |
| Appellants, | § | Appeal from |
| v. | § | County Court at Law No. 6 |
| | | of El Paso County, Texas |
| CITY OF EL PASO, TEXAS, and OFFICER ISRAEL RODRIGUEZ-ACEVES, | § § | (TC # 2010-2422) |
| | § | |
| Appellees. | | |

## O P I N I O N

Appellants bring this interlocutory appeal from the trial court's order granting Appellees' pleas to the jurisdiction. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (West 2008). We reverse.

## BACKGROUND

Appellants (Carlos Diaz De Leon, Daniel Marquez, Kimo Sylva, and Gabriel Morales)[1] sued Appellees (El Paso Police Officer Israel Rodriguez-Aceves and the City of El Paso),[2,3] alleging

---

[1] In their petition, plaintiffs referred to themselves as "Carlos Diaz De Leon, John Doe No. 1, John Doe No. 2, John Doe No. 3, and John Doe No. 4." They explained that they "ha[d] assumed pseudonyms for reasons of privacy and to protect their families from retaliation." It appears now that four of the five original plaintiffs have decided to prosecute this interlocutory appeal and that the "John Does" among them have decided to reveal their true names. Presumably, Appellants will amend their original petition to conform to Texas Rule of Civil Procedure 79 ("The petition shall state the names of the parties . . . .").

[2] Appellants sued Rodriguez-Aceves in both his official and personal capacities. *See Texas A & M Univ. System v. Koseoglu*, 233 S.W.3d 835, 844 (Tex. 2007) (suit against government employee in official capacity is merely another way to sue governmental unit of which the employee is an agent). According to Appellants' appellate brief, they "have limited their appeal of the trial judge's Order Granting Defendants' Pleas to the Jurisdiction as to Appellee Rodriguez-Aceves as to their claim against him in his official capacity."

[3] Appellants also sued several other defendants in this lawsuit, but, at this time, we need not discuss those other defendants or Appellants' claims against them.

violations of Texas Constitution Article I, § 3, and seeking declaratory and injunctive relief.[4,5]  In their petition, Appellants alleged the following:[6]  On the evening of June 28, 2009, Appellants, all of whom were men, entered the "Chico's Tacos" restaurant on Montwood Avenue in El Paso.  They placed their orders at the service counter, and, after receiving their orders, they sat down to eat.  While they were standing at the service counter, two of them kissed briefly.[7]  As they took their seats, the two who had kissed at the service counter kissed again, briefly.  A restaurant security guard approached Appellants and told them, "If you continue with your clowning around, we will throw you out of here.  We won't allow you to do faggot things here."  Appellants expressed puzzlement at the security guard's threat, and the guard responded by calling them "pigs" and again threatening to eject them from the restaurant.  Appellants, believing that the security guard had violated their legal right to be free from discrimination based on sexual orientation, sought assistance from the manager of the restaurant, but the manager declined to intervene.  Appellants then telephoned the El Paso police.  About 45 minutes later, Rodriguez-Aceves and another police officer arrived at the

_____

[4]  Article I, § 3, provides:  "All free men, when they form a social compact, have equal rights, and no man, or set of men, is entitled to exclusive separate public emoluments, or privileges, but in consideration of public services."  The protection afforded by Article I, § 3, generally mirrors the protection afforded by the equal protection clause of the Fourteenth Amendment.  *Richards v. LULAC*, 868 S.W.2d 306, 310-11 (Tex. 1993).  Thus, Article I, § 3, generally requires that all persons similarly situated be treated alike.  *See City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439-41 (1985) (discussing equal protection law).  Article I, § 3, allows the government to intentionally treat similarly situated persons differently if the government has sufficient justification for doing so.  *Richards*, 868 S.W.2d at 310-11.  At a minimum, the difference in treatment must be reasonably related to a legitimate state interest.  *Id*.  Animosity toward an individual or social group, e.g., gay persons, is not a legitimate state interest.  *Romer v. Evans*, 517 U.S. 620, 634 (1996).

[5]  Appellants also alleged in their petition that Appellees violated the due course of law guarantee in Texas Constitution Article I, § 19.  However, according to Appellants' appellate brief, they have abandoned their due course of law claim.

[6]  For the sake of brevity, we have omitted certain allegations not essential to our discussion.

[7]  Appellants did not specify in their petition which of them engaged in the kissing.

2

scene.  Rodriguez-Aceves, after speaking with the security guard and with Appellants, told Appellants that it was "against the law for two men to kiss in public" and that he could arrest them for "that kind of behavior."[8]  Appellants asked the officers for their names, but they declined to give out that information, with Rodriguez-Aceves explaining, "You do not need our names because there will be no police report."  Appellants insisted that they wanted a police report filed, but Rodriguez-Aceves responded by saying that he could file a police report only if he first arrested them for homosexual conduct.  He also told them, "You should know the law before you call the police."  He then ordered Appellants to leave the restaurant, telling them, "You are lucky that you are not going to be ticketed for homosexual activity."

Appellants alleged in their petition that Rodriguez-Aceves violated their right to equal treatment under Texas Constitution Article I, § 3, and caused them mental anguish by:  (1) publicly humiliating them and treating them like criminals, on the basis of their sexual orientation; (2) threatening them with arrest under Texas Penal Code § 21.06, the homosexual conduct statute, although it had previously been declared unconstitutional;[9] (3) failing to enforce the City's anti-

---

[8]  It appears that Rodriguez-Aceves was wrong.  Texas Penal Code § 21.06, the homosexual conduct statute, provides:  "A person commits an offense if he engages in deviate sexual intercourse with another individual of the same sex."  TEX. PEN. CODE ANN. § 21.06(a) (West 2011) (declared unconstitutional in *Lawrence v. Texas*, 539 U.S. 558 (2003)).  "Deviate sexual intercourse" does not include kissing.  TEX. PEN. CODE ANN. § 21.01(1) (West 2011).  Thus, section 21.06 does not purport to criminalize kissing between two members of the same sex, and we know of no other provision of law that purports to do so.

[9]  In *Lawrence v. Texas*, 539 U.S. 558 (2003), the United States Supreme Court held that section 21.06 violates the due process clause of the Fourteenth Amendment.  In the course of its analysis, the Court stated that, consistent with the liberty guaranteed to all persons by the Fourteenth Amendment, gay persons "are entitled to respect for their private lives" and "[t]he State cannot demean their existence or control their destiny" by making the expression of their sexual orientation a crime.  *Id*. at 578.

3

discrimination ordinance against the operators of the "Chico's Tacos" restaurant;[10,11] and (4) refusing to file a police report of the incident at the restaurant. For relief from these alleged constitutional violations, Appellants sought a declaratory judgment that Rodriguez-Aceves violated their right under Article I, § 3, and a permanent injunction directing him and all other El Paso police officers to refrain from using section 21.06 to threaten, harass, or arrest anyone.

Appellants also alleged in their petition that the City of El Paso violated their right under Article I, § 3, when the City's police chief, acting with "conscious indifference" to the constitutional right of gay El Pasoans to equal treatment, "decided" not to provide training to the City's police officers regarding the City's anti-discrimination ordinance or the fact that Texas Penal Code § 21.06 had been declared unconstitutional, even though it was foreseeable that some police officers would remain ignorant of the current law and would continue to discriminate against gay El Pasoans. Appellants alleged further that, had the City properly trained its police officers, Rodriguez-Aceves would not have behaved as he did on the evening in question. For relief from this alleged constitutional violation, Appellants sought a declaratory judgment that the City violated their right under Article I, § 3, and a permanent, mandatory injunction directing the City "to immediately

---

[10] El Paso Municipal Code § 10.16.010, adopted in 2003, provides:

It is unlawful for any person, firm, association or corporation, or any agent, servant or employee thereof within the city, to refuse, deny or withhold from any person, for any reason directly or indirectly relating to the race, gender, gender identity, sexual orientation, color, religion, ethnic background or national origin of such person, any of the accommodations, advantages, facilities or services offered to the general public by place of public accommodation.

The phrase "public accommodation" as used in section 10.16.010 includes restaurants. EL PASO MUN. CODE § 10.16.020. Violation of section 10.16.010 is a misdemeanor offense punishable by a fine of up to $200. EL PASO MUN. CODE § 10.16.050.

[11] When a violation of a penal law is brought to a police officer's attention, he is duty-bound to enforce that law. TEX. CODE CRIM. PROC. ANN. art. 2.13(b) (West 2005).

institute appropriate . . . training and other measures to . . . ensure that the constitutional violations [in question] cease to occur."

Appellees Rodriguez-Aceves and the City each filed a plea to the jurisdiction. In their pleas, Appellees argued that: (1) Appellants lacked standing to bring this lawsuit, because none of them suffered a concrete, particularized injury at the hands of Appellees; (2) Appellants' allegations against the City amounted to a negligence claim, for which there was no waiver of governmental immunity; and (3) Appellants' lawsuit did not present a controversy that was ripe for adjudication. The trial court granted Appellees' pleas to the jurisdiction but did not file any conclusions of law regarding its order.

Before this Court, Appellants argue that the trial court erred in granting Appellees' pleas to the jurisdiction because Appellees offered no valid legal basis on which those pleas could be granted. Appellants argue that they suffered real injury at the hands of Appellees, and thus did have standing to bring this lawsuit, because Rodriguez-Aceves "harassed and threatened [them] because of their status or perceived status as homosexual[s]," because he failed to enforce the City's anti-discrimination ordinance against the operators of Chico's Tacos, and because he would not have acted as he did but for the City's failure to train him properly. Appellants also argue that their lawsuit did in fact present a ripe controversy suitable for judicial resolution. Finally, Appellants argue that governmental immunity did not bar their lawsuit because they were seeking declaratory and injunctive relief for violations of the Texas Constitution.

**DISCUSSION**

A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to whether the claims asserted have merit. *Bland I.S.D. v. Blue*, 34 S.W.3d 547, 554

5

(Tex. 2000). Thus, the plea must be determined without delving into the merits of the case, i.e., without considering whether the plaintiff can actually prove a cognizable claim. *Id.* The court, in ruling on the plea, must construe the pleadings in favor of the plaintiff. *Texas Ass'n of Business v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). A trial court's ruling on a plea to the jurisdiction is reviewed *de novo* on appeal. *Texas Dept. of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

We turn first to Appellants' argument regarding their injury and thus their standing to bring this lawsuit. The requirement that a plaintiff have "standing" to assert a claim comes from the Texas Constitution's separation of powers among the departments of government, which denies the judiciary the authority to decide issues in the abstract, and from the Open Courts provision, which provides court access only to a "person for an injury done him." *DaimlerChrysler v. Inman*, 252 S.W.3d 299, 304 (Tex. 2008). A court has no subject matter jurisdiction over a claim made by a plaintiff without standing. *Id.* A plaintiff, to have standing, must be personally aggrieved by the defendant; his alleged injury, economic or otherwise, must be concrete and particularized, actual or imminent, but not hypothetical. *Id.* at 304-05. The degree of injury that must be shown need not be great, yet it also must not be "too slight for a court to afford redress." *Id.* at 305.

Appellants, in their petition, alleged that Rodriguez-Aceves intentionally humiliated them, treated them like criminals, threatened them with arrest under an unconstitutional statute, failed to provide them the protection of the City's anti-discrimination ordinance, and ordered them to leave the restaurant in question, all because they were homosexual and, in Rodriguez-Aceves' eyes, undeserving of his service and protection. Appellants also alleged that Rodriguez-Aceves would not have behaved as he did but for the City's failure to train him properly. If Rodriguez-Aceves acted

6

as Appellants alleged, then his comments to them were likely to generate feelings of frustration, anger, embarrassment, and humiliation, and were likely to reinforce erroneous beliefs in others present. Additionally, if Rodriguez-Aceves acted as Appellants alleged, then he also denied them the protection of the City's anti-discrimination ordinance and forced them to leave the restaurant against their will. We conclude that Appellants have alleged facts showing injury sufficient to establish standing to bring this lawsuit. We sustain Appellants' first point of error.

We turn next to Appellants' argument regarding the ripeness of their claims. Ripeness "is a threshold issue that implicates subject matter jurisdiction." *Patterson v. Planned Parenthood*, 971 S.W.2d 439, 442 (Tex. 1998). Ripeness concerns whether, at the time a lawsuit is brought, "the facts have developed sufficiently so that an injury has occurred or is likely to occur, rather than being contingent or remote." *Id*.

Appellants' allegations in their petition all concern events and injuries that allegedly occurred at a time certain in the past. Consequently, we conclude that Appellants' claims are ripe for judicial resolution. We sustain Appellants' second point of error.

We turn finally to Appellants' argument concerning the common law doctrine of "governmental immunity." That doctrine protects political subdivisions of the State, including cities, from suit and liability for money damages. *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003). Governmental immunity, if it applies in a case, defeats the trial court's subject matter jurisdiction over the case. *Texas Dept. of Transp. v. Jones*, 8 S.W.3d 636, 638-39 (Tex. 1999). The purpose of the doctrine of governmental immunity, if we are to be realistic about it, is to protect the public purse. *Wichita Falls State Hosp.*, 106 S.W.3d at 695. A government officer or employee sued in an official capacity is entitled to governmental immunity to the extent that

immunity is available to the government employer. *McCartney v. May*, 50 S.W.3d 599, 606 (Tex. App. – Amarillo 2001, no pet.). But the doctrine of governmental immunity does not bar suits for equitable relief for violations of the Texas Constitution. *City of Beaumont v. Bouillion*, 896 S.W.2d 143, 149 (Tex. 1995); *City of El Paso v. Bustillos*, 324 S.W.3d 200, 205 (Tex. App. – El Paso 2010, no pet.); W. Dorsaneo, 19 *Texas Litigation Guide* § 293.01[2] (2011). In this manner, our law protects the public purse while also protecting the right of every individual to claim the protection of the state constitution.

Appellants brought their suit for declaratory and injunctive relief for alleged violations of the Texas Constitution. We conclude that their suit is not barred by the doctrine of governmental immunity. We sustain Appellants' fourth point of error. Having sustained Appellants' first, second, and fourth points of error, we need not reach their third point of error, which is superfluous.[12]

In view of the foregoing, the trial court could not have properly granted Appellees' pleas to the jurisdiction on the grounds asserted by Appellees.[13] We therefore reverse the order of the trial court and remand the case to that court for further proceedings.

GUADALUPE RIVERA, Justice

October 26, 2011

Before McClure, C.J., Rivera, J., and Chew, C.J., (Senior)

---

[12] In their third point of error, Appellants argue, "The trial court erred when it dismissed Plaintiffs' claims because Plaintiffs pleaded all of the required grounds for equitable relief . . . ."

[13] In their briefs to this Court, Appellees make certain arguments in support of the trial court's ruling that they did not make below. We decline to address these new arguments. "Although subject matter jurisdiction cannot be waived and may be raised for the first time in an appeal from a final judgment, section 51.014(a)(8) of the civil practice and remedies code does not grant this Court jurisdiction to review claims that were neither included in the plea to the jurisdiction nor considered by the [trial] court." *Austin I.S.D. v. Lowery*, 212 S.W.3d 827, 834 (Tex. App. – Austin 2006, pet. denied).