# IN THE SUPREME COURT OF TEXAS

══════════

No. 18-0469

══════════

FARMERS TEXAS COUNTY MUTUAL INSURANCE COMPANY, PETITIONER,

v.

RODNEY BEASLEY, RESPONDENT

══════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE COURT OF APPEALS FOR THE
TWELFTH DISTRICT OF TEXAS
══════════════════════════════════════════════

**Argued November 5, 2019**

JUSTICE GREEN delivered the opinion of the Court.

In this case we must decide whether an injured plaintiff had standing to bring suit against his personal injury protection (PIP) policy insurer after the insurer paid the incurred medical expenses pursuant to the PIP policy, but the amount the PIP insurer paid was the negotiated rate between the plaintiff's health care insurer and the medical providers—not the medical providers' list rate. The trial court concluded that the plaintiff did not suffer any threatened or actual harm when the PIP insurer paid the amount of medical expenses that the plaintiff's medical insurer actually paid the medical providers pursuant to an agreement with those providers. The court of appeals reversed, holding that the plaintiff's allegation in his petition that the PIP insurer breached the terms of the PIP policy was sufficient to invoke the trial court's jurisdiction. 578 S.W.3d 98, 105–06 (Tex.

App.—Tyler 2018, pet. granted). We disagree with the court of appeals and conclude that the plaintiff is unable to show that he suffered any actual or threatened harm as a result of the PIP insurer's payments under the PIP policy. Accordingly, we reverse the judgment of the court of appeals and dismiss the plaintiff's suit for want of jurisdiction.

## I. Background

On October 20, 2007, Rodney Beasley was injured in a car accident in Anderson County, Texas. Beasley sought treatment for his injuries and received medical bills from physicians and a rehabilitation center, the list rates of which totaled $2,662.54. At the time of the accident, Beasley had health insurance through BlueCross BlueShield (BCBS). BCBS had negotiated reimbursement rates with Beasley's medical providers and paid the medical providers pursuant to those rates. The total amount BCBS paid Beasley's medical providers was $1,068.90. After BCBS paid the negotiated rates for Beasley's care, his medical providers did not attempt to recover, or hold him liable for, the difference between the providers' list rates and the negotiated rates that BCBS actually paid. Accordingly, Beasley was not personally responsible for any out-of-pocket medical costs associated with his accident.

In addition to health insurance, Beasley had a PIP policy through Farmers Texas County Mutual Insurance Company (Farmers).[1] The PIP policy stated that Farmers would "pay Personal Injury Protection benefits because of bodily injury: 1. resulting from a motor vehicle accident; and 2. sustained by a covered person." The policy went on to specify that the "Personal Injury

---

[1] The insured person named on the PIP policy is "Rhonda Stovall," but Farmers acknowledges that Beasley is a covered person under the policy.

2

Protection benefits consist of: 1. Reasonable expenses incurred for necessary medical and funeral services." Beasley's PIP policy had a maximum coverage amount of $2,500. Nearly three years after the accident, Beasley made a PIP claim to Farmers based on the medical providers' list rates. The medical provider statements that Beasley presented to Farmers showed that the providers had agreed to accept from BCBS the negotiated rates as full payment for the medical care provided to Beasley—$1,068.90. Beasley was not liable for any difference between the providers' list rates and what BCBS actually paid the providers pursuant to its negotiated rates. As a result, Farmers paid Beasley $1,068.90.

Beasley contacted Farmers and demanded an additional payment of $1,431.10—the difference between what Farmers paid Beasley and the PIP policy maximum. Farmers maintained that because the PIP policy covered "reasonable expenses incurred for necessary medical and funeral services," it did not owe Beasley anything beyond what was incurred—the $1,068.90 that BCBS paid Beasley's medical providers. Farmers also asked Beasley to provide records of any additional medical expenses that were incurred relating to his automobile accident, and Beasley provided none.

Beasley sued Farmers, alleging breach of contract, Texas Insurance Code violations, and Texas Deceptive Trade Practices Act violations. Beasley claimed that Farmers "arbitrarily reduced [Beasley's] benefits because of health benefits paid under [his] independently obtained health insurance, thereby violating the express terms of the [PIP policy]." He sought to recover the difference between what Farmers paid him and the PIP policy maximum of $2,500. Farmers responded to Beasley's claims with a general denial and a plea to the jurisdiction, arguing that Beasley lacked standing to sue Farmers under the PIP policy because Beasley alleged no actual or

3

threatened injury. Specifically, Farmers argued that the PIP policy authorized payment for medical expenses incurred, and Farmers paid Beasley for all of the medical expenses he incurred, which were the expenses BCBS paid to Beasley's medical providers. According to Farmers, the medical expenses incurred were not the providers' list rates—they were what the providers accepted as full payment from BCBS. Farmers argued that *Allstate Indemnity Co. v. Forth*, 204 S.W.3d 795 (Tex. 2006) (per curiam), and *Haygood v. De Escabedo*, 356 S.W.3d 390 (Tex. 2011), are controlling in this case and stand for the proposition that a PIP beneficiary may not collect the difference between medical providers' list rates and what a health insurer actually paid when the providers accepted the health insurer's payment as full payment.

The trial court granted Farmers's plea to the jurisdiction and dismissed Beasley's suit. On appeal, Beasley argued that he had established a justiciable claim—that "*he* was personally aggrieved when Farmers paid him an inadequate PIP benefit." Specifically, Beasley contended that his allegation that Farmers's payments were not reasonable was sufficient to establish standing and invoke the trial court's subject matter jurisdiction. Beasley argued that courts should not look beyond the allegations to the merits of a case when making a standing determination. The court of appeals agreed with Beasley and concluded that his allegations were sufficient to establish standing to sue Farmers under the PIP policy. 578 S.W.3d at 105–06. In reaching this conclusion, the court of appeals distinguished Beasley's case from *Forth* on the basis that, unlike Beasley, "Forth was not making a claim for monetary damages"—Forth was seeking injunctive relief and sought to require "Allstate to conduct an independent payment review of the reasonableness of the medical expenses Allstate paid." *Id.* at 103–04 (discussing *Forth*, 204 S.W.3d at 795).

4

## II. Standard of Review

We review questions of standing de novo. *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 646 (Tex. 2004). This is because standing is a component of subject matter jurisdiction. *See Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 849 (Tex. 2005) (citations omitted) ("Without standing, a court lacks subject matter jurisdiction to hear the case."); *see also* W. Wendell Hall & Ryan G. Anderson, *Standards of Review in Texas*, 50 ST. MARY'S L.J. 1099, 1244 (2019) (citations omitted) ("The de novo standard of review applicable to subject-matter jurisdiction applies to standing as well . . . ."). Because a plea to the jurisdiction raises a question of standing, we also review a plea to the jurisdiction de novo. *See Presidio Indep. Sch. Dist. v. Scott*, 309 S.W.3d 927, 929 (Tex. 2010) (citations omitted) ("We review a trial court's order granting or denying a plea to the jurisdiction de novo."). In applying a de novo standard of review to a standing determination, reviewing courts "construe the pleadings in the plaintiff's favor, but we also consider relevant evidence offered by the parties." *In re H.S.*, 550 S.W.3d 151, 155 (Tex. 2018) (citations omitted).

## III. Analysis

Farmers's principal argument is that the court of appeals erred in failing to follow our opinion in *Forth*, and therefore failed to apply this Court's standing jurisprudence. *See Forth*, 204 S.W.3d 795. From Farmers's view, the facts in *Forth* are essentially the facts here, so the Court should follow the holding in *Forth* and conclude that Beasley lacks standing. *See id.* at 795–96. Meanwhile, Beasley contends that *Forth* is distinguishable from his case, and to the extent that it

5

is indistinguishable, it should not be relied on at this juncture. We disagree with Beasley and conclude that *Forth* controls in deciding Beasley's standing.

## A. Standing Jurisprudence

Standing is a threshold requirement to maintaining a lawsuit. *See Heckman v. Williamson Cty.*, 369 S.W.3d 137, 150 (Tex. 2012) (citations omitted) ("Standing is a constitutional prerequisite to suit. A court has no jurisdiction over a claim made by a plaintiff who lacks standing to assert it."). To establish standing in Texas, a plaintiff must allege "a concrete injury . . . and a real controversy between the parties that will be resolved by the court." *Id.* at 154. Specifically, the plaintiff must allege a threatened or actual injury—it may not be hypothetical. *See Forth*, 204 S.W.3d at 796; *see also DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304–05 (Tex. 2008) (citations omitted) ("For standing, a plaintiff must be personally aggrieved; his alleged injury must be concrete and particularized, actual or imminent, not hypothetical.").

In determining whether a plaintiff has alleged a concrete injury sufficient to meet the standing requirement, courts look to the plaintiff's pleadings. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993) (citation omitted) ("A review of only the pleadings to determine subject matter jurisdiction is sufficient in the trial court because a litigant has a right to amend to attempt to cure pleading defects if jurisdictional facts are not alleged. Failing that, the suit is dismissed."). Because the standing determination is made by looking to the plaintiff's pleadings, the mere fact that a plaintiff may ultimately not prevail on the merits of the lawsuit does not deprive the plaintiff of standing. *Inman*, 252 S.W.3d at 305 ("A plaintiff does not lack standing

simply because he cannot prevail on the merits of his claim; he lacks standing because his claim of injury is too slight for a court to afford redress.").

A defendant may challenge a plaintiff's standing by filing a plea to the jurisdiction. *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 384 (Tex. 2016) (citation omitted) ("Whether a court has subject matter jurisdiction is a question of law, properly asserted in a plea to the jurisdiction."). In ruling on a defendant's plea to the jurisdiction, courts should decide the plea "without delving into the merits of the case." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). But a court "is not required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised." *Id.* at 555. Indeed, "if a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004). When undisputed evidence supports the plea to the jurisdiction and "implicates the merits of the case, we take as true all evidence favorable to the nonmovant[,] . . . [and w]e indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Id.* at 228 (citation omitted). If, after examining the pleadings and any undisputed standing evidence, the court concludes that standing does not exist, the case must be dismissed. *See Heckman*, 369 S.W.3d at 150.

### B. *Forth* Controls

The facts in *Forth* are nearly identical to the facts here. In *Forth*, an injured driver was covered by a PIP policy similar to Beasley's that covered "reasonable medical expenses incurred for necessary medical services" stemming from an accident. 204 S.W.3d at 795. Allstate, the PIP

insurer, settled Forth's medical bills for less than the medical providers' list rates. *Id.* After Allstate paid the medical bills, "Forth sued Allstate for injunctive and declaratory relief, alleging that it arbitrarily reduced her bills without using an independent and fair evaluation to determine what amount of her medical expenses were reasonable." *Id.* Similar to Beasley's case, Forth did not allege that she suffered any damage, or was liable for any unreimbursed, out-of-pocket medical expenses as a result of Allstate's conduct. *Id.* at 795–96. The trial court granted Allstate's motion to dismiss on the basis that Forth lacked standing because she had not alleged any damages. *Id.* at 796. The court of appeals reversed, holding that "the insured had standing to sue her insurance company despite its settlement of her medical claims to the apparent satisfaction of the medical providers." *Id.* We then reversed the judgment of the court of appeals. *Id.* We concluded that Forth did "not claim that she ha[d] any unreimbursed, out-of-pocket medical expenses," nor did she claim that the "providers withheld medical treatment as a result of Allstate reducing their bills." *Id.* Thus, Forth did not claim that Allstate's settlement caused her any injury and therefore she lacked standing to sue. *Id.* We rendered judgment dismissing Forth's claims against Allstate. *Id.*

The only meaningful difference between the facts in *Forth* and the facts here is the type of relief Beasley sought. Forth sought injunctive and declaratory relief, seeking to require Allstate to use "an independent and fair evaluation to determine what amount of [Forth's] medical expenses were reasonable." *Id.* at 795. Beasley, on the other hand, sued for monetary damages, seeking to recover the difference between what Farmers actually paid and the PIP policy maximum. While the relief Forth and Beasley sought differed, their ultimate aim in bringing their suits was the same: they both claimed that a PIP insurer who paid negotiated rates to satisfy all of the plaintiff's financial

8

obligations to medical providers did not pay reasonable medical expenses that the plaintiffs incurred. *See id.* In other words, both believed that their PIP policies entitled them to recover the providers' list rates or some other amount higher than the negotiated rates. As a result, the standing question in both cases is exactly the same: Did the litigant plead an injury sufficient to invoke the trial court's jurisdiction? The answer to this question should be the same in both cases, notwithstanding the difference in the relief sought. *See Heckman*, 369 S.W.3d at 154 ("[T]he motivating concern behind the standing inquiry is exactly the same regardless of the form of the suit . . . ."). Beasley, like Forth, does not claim that he is responsible for any unreimbursed, out-of-pocket medical expenses. Nor does Beasley assert that any of his medical providers withheld treatment as a result of the adjusted bills on which Farmers based its reimbursement. We can discern no principled basis for reaching a conclusion inconsistent with *Forth*. Accordingly, like Forth, we conclude that Beasley failed to allege an actual or threatened injury.

Beasley also attempts to distinguish his case from *Forth* by arguing that Farmers impermissibly considered a collateral source in determining how much to reimburse: BCBS's payments to Beasley's medical providers. But a health insurer's negotiated discounts do not constitute a collateral source of benefits to the insured in this context. In *Haygood*, we discussed that "providers commonly bill insured patients at list rates, with reductions to reimbursement rates shown separately as adjustments or credits." 356 S.W.3d at 394. We observed that "[a]n adjustment in the amount of those charges to arrive at the amount owed is a benefit to the insurer, one it obtains from the provider for itself, not for the insured." *Id*. at 395. Accordingly, we rejected the notion that

9

"an adjustment in billed medical charges required by an insurer is a collateral benefit covered by the [collateral source] rule." *Id.* As a result, the collateral source rule is inapplicable in Beasley's case.

We see no reason to disturb this Court's holding in *Forth*. And because, as we have already discussed, there are no meaningful grounds on which to distinguish Beasley's claims from those in *Forth*, the court of appeals erred in concluding that Beasley established standing in his suit against Farmers. Absent a compelling reason to overrule our holding in *Forth*, we will continue to follow this Court's precedent. *See Lubbock Cty. v. Trammel's Lubbock Bail Bonds*, 80 S.W.3d 580, 585 (Tex. 2002) (citation omitted) ("Generally, the doctrine of stare decisis dictates that once the Supreme Court announces a proposition of law, the decision is considered binding precedent.").

## IV. Conclusion

We hold that the court of appeals erred in concluding that Beasley's allegations were sufficient to establish standing and invoke the trial court's jurisdiction. The evidence supported Farmers's contention that Beasley had not suffered any actual or threatened injury. We therefore reverse the judgment of the court of appeals and dismiss Beasley's suit against Farmers for want of jurisdiction.

_____
Paul W. Green
Justice

OPINION DELIVERED: March 27, 2020

10