

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| ETC TEXAS PIPELINE, LTD. and LG PL, LLC, | § | No. 08-23-00010-CV |
| | § | Appeal from the |
| Appellants, | § | 36th Judicial District Court |
| v. | § | of McMullen County, Texas |
| AGERON ENERGY, LLC, | § | (TC# M-22-0011-CV-A) |
| Appellee. | § | |

## DISSENTING OPINION

I disagree that Ageron lacked standing to bring a trespass claim for injuries it sustained, March 2022, to its equipment, wellbore, and leasehold interest generally. While the Supreme Court of Texas has not expressly recognized a surface owner's cause of action for trespass due to subsurface migration, it has recognized an actionable trespass for injury occurring when unauthorized conduct interferes with development rights of a mineral lessee. *Regency Field Servs., LLC v. Swift Energy Operating, LLC*, 622 S.W.3d 807, 816 n.18 (Tex. 2021) (citing *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 49 (Tex. 2017)). Pleading facts demonstrating the subject-matter jurisdiction of the trial court, Ageron alleges it was actively exploring and developing its mineral estate when the $H_2S$ plume injected by ETC interfered with

1

its right to develop. Because I believe the majority wrongly denies standing to Ageron's trespass with injury claim, I respectfully dissent.

As underscored in *Coastal Oil & Gas Corp. v. Garza Energy Trust*, 268 S.W.3d 1, 9 (Tex. 2008), common law trespass includes at least two types of trespass actions, each directed at different kinds of wrongs. "Trespass *quare clausum fregit*" is limited to an action for a physical invasion of plaintiff's possessory interest in land. *Id*. (recognizing in note 21 the gist of the trespass action as an injury to the right of possession; thus, the plaintiff must show actual or constructive possession at the time of the trespass). This type of trespass could be maintained without proof of actual damages, as a plaintiff could recover nominal damages where no substantial damages were otherwise shown. *Id*. at 11 n.28. Conversely, a "trespass on the case" is not limited to such an invasion of a possessory interest. *Id*. at 9. Rather, this additional type of trespass provides for an action for injury to a non-possessory interest when more than trespass is shown. *Id*. at 9–10. To maintain this latter type of trespass, the holder of a property right must show an actual injury caused by trespass, and not rely on nominal damages alone in support of the claim. *Id*. at 10.

For example, in *Lightning Oil*, the plaintiff alleged that certain "underground well structures" would interfere with "both the surface and subsurface spaces necessary for it to exercise its right to develop[.]" *Lightning Oil*, 520 S.W.3d at 49. There, the Supreme Court recognized the trespass cause of action as being applicable given that a mineral lessee had asserted a claim for interference with its right to develop. *Id*. Setting a limit, however, the Court noted that "an unauthorized interference with the *place* where the minerals are located constitutes a trespass as to the mineral estate *only if* the interference infringes on the mineral lessee's ability to exercise its rights[,]" particularly, the right to develop. *Id.* (second emphasis added). Yet, the Court continued, "[w]hether the small amount of minerals lost … will support a trespass action must, in the end, be

2

answered by balancing the interests involved[.]" *Id*. at 50 (citing *Humble Oil & Ref. Co. v. West*, 508 S.W.2d 812, 816 (Tex. 1974)).

Following that decision, in *Regency*, the Court again confirmed this actionable trespass to a mineral lessee's right to develop. 622 S.W.3d at 816. Focusing on the required injury, it noted, "a claim for trespass to non-possessory property rights under a mineral lease . . . arises when the defendant's unauthorized conduct first invades or interferes with the claimant's legal rights 'to explore, obtain, produce, and possess the minerals subject to the lease,' because that invasion or interference constitutes the actionable legal injury."[1] *Id.* (quoting *Lightning Oil*, 520 S.W.3d at 49). In my view, this latter type of actionable trespass applies to Ageron's pleaded claims.

Here, Ageron brings claims as a mineral lessee. In its pleading, it describes itself as "the P-4 operator" under the Dickinson Lease. It alleges that, in December 2021, it was granted permission by the Railroad Commission to drill a new well, the DH Unit #2 Well (the DH Well). It further alleges that ETC sent it a letter giving notice that any well it drilled deeper than 5,870 feet would necessarily drill through the portion of the Wilcox formation in which ETC had ongoing acid gas injection operations. To this extent, Ageron recognized that ETC's letter advised it to "plan for, and put in place, all necessary safety measures and operational procedures to ensure that no injectate is released from ETC's permitted injection interval in [that] formation during the drilling, completion and production of Ageron's wells." It claims it not only heeded ETC's warning but also sought its input. It claims it provided ETC with copies of several items to include its $H_2S$ contingency plan, proposed casing program, proposed drilling mud program, and its well profile. Ageron alleges it provided this information expecting ETC would advise and warn of any

---

[1] Distinguishing the differing types of trespass, *Regency* noted that a surface owner's trespass claim for unauthorized physical entry upon its land or other invasion of its *possessory* property interest generally accrues when the unauthorized entry occurs. 622 S.W.3d at 816 n.18.

concerns with the proposed drilling plan. Similarly, it also alleges it submitted an $H_2S$ contingency plan to the Railroad Commission, which it approved in January 2022.

Next, Ageron claims it spudded the DH Well on February 8, 2022, purportedly after due consideration was given to the concentration level of the $H_2S$ that ETC had reported to the Railroad Commission. After drilling reached a total depth of nearly 5,900 feet, it alleged it "then set 9 5/8" casing in preparation to drill through the remainder of the $H_2S$ injection zone." But, sometime during the active drilling from March 5 through March 13, 2022, after the wellbore reached a total depth of nearly 6,040 feet, Ageron claims it suffered a catastrophic drill-pipe separation. It alleged this interference and injury to its development efforts was caused by "embrittlement, corrosion, and cracking from Defendant ETC's trespassing [$H_2S$]." Ageron again claims it reached out to ETC asking for it to briefly shut in its injection well while it continued to drill through the Wilcox injection zone. But ETC refused to accommodate its efforts. On March 13, 2022, Ageron alleges it had no choice but to plug and abandon the DH Well as a substantial length of broken drill pipe remained in the drilling hole. Ageron pleaded that, as a direct result of ETC's alleged trespass and negligent $H_2S$ injection, it suffered more than $5 million in well and equipment costs during the failed drilling of the DH Well. And because the Dickinson Lease had by then expired, Ageron further claims the value of the lease was forever lost to it.

Based on *Lighting Oil* and *Regency*, I would construe Ageron's petition as intending a trespass on the case for its claimed injury to its right to develop on the leasehold; and, as pleaded, Ageron's injury is concrete and particularized, not hypothetical. *See DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304–05 (Tex. 2008) ("For standing, a plaintiff must be personally aggrieved; his alleged injury must be concrete and particularized, actual or imminent, not hypothetical. A plaintiff does not lack standing simply because he cannot prevail on the merits of his claim; he lacks standing because his claim of injury is too slight for a court to afford redress.").

4

To that extent, I disagree with the majority as I would conclude the trial court did not err in denying ETC's motion to dismiss based on lack of standing.

As for the claims filed by the Dickinson family in 2014 (which they brought after H₂S killed cows on their property), I would hold those claims differ from the claims brought by Ageron; and, in any event, if the Dickinson family had sought damages for an injury to their right to develop their minerals, their claims were prematurely brought. Specifically, the Dickinson family alleged "trespass, for causing $H_2S$ to enter their surface and mineral interest without consent[;]" as well as alleging "waste, for diminishing the value of their mineral interests or making them impossible to exploit[.]" Despite these broad assertions, neither the pleading itself, nor any further proof otherwise brought forth by ETC's motion to dismiss, alleges an injury or interference with the actual development of the Dickinson family's mineral interest. *See Lightning Oil*, 520 S.W.3d at 49. And as for the ripeness of a mineral-injury claim, in *Lyle v. Midway Solar, LLC*, 618 S.W.3d 857, 875 (Tex. App.—El Paso 2020, pet. denied), this Court determined that any cause of action for interference with the right to develop is premature until the claimholder "actually seek[s] to develop their mineral estate." Further explaining, we noted, "[w]ere it otherwise a mineral owner who undertakes no efforts to develop the mineral estate could claim damages from any surface activities that might hinder—at some point in the future—the exploration for oil and gas." *Id*. at 874. I would thus conclude that the Dickinson family's pleading failed to allege any injury to the exercise of their right to develop their minerals, and no proof of this type of injury was otherwise provided by ETC's motion. As a result, the record fails to establish what ETC has argued as the basis of its dismissal motion, that Ageron brings the same claims for the same injury to the same property.

Lastly, the majority's determination that Ageron's cause of action accrued at either the time when the H₂S crossed the lease boundary, or when the Dickinson family brought its property-

owner claim, leads to other significant problems. Relying on the single-injury rule, it ultimately requires future operators to bring causes of action at a point when damages to their development rights are impossibly speculative and premature. I worry that such requirement will undesirably chill mineral development as operators will be hesitant to explore in subsurface areas where a migration of $H_2S$ has been earlier noted either by geological data alone, or by ill effects suffered by livestock on the property.

## CONCLUSION

In summary, I disagree with the majority's determination that Ageron has no standing to bring its trespass-with-injury cause of action on the basis that any harm to its mineral interests accrued no later than 2014 when the Dickinson family pursued a trespass claim after their cows had died due to their $H_2S$ exposure. I believe this conclusion conflates a surface owner's trespass-to-possessory-rights cause of action to its possessory rights with a trespass cause of action belonging to a mineral lessee who sustains an injury while developing its mineral interests. Instead, I would conclude that Ageron established its standing to bring a trespass cause of action for interference with its development right as shown by the catastrophic drill pipe failure in March 2022. Because the majority concludes otherwise, I respectfully dissent.[2]

GINA M. PALAFOX, Justice

December 29, 2023

---

[2] Because the majority opinion is limited to standing, I similarly limit the scope of my opinion and I express no view on the correctness of the trial court's denial of ETC's TCPA motion.