# Supreme Court of Texas

No. 24-0782

Ryan Busse, Josh Klostermann, Russel Klostermann, Layne
Klostermann, Mitch Thomas, Olivia Rincones, Robert Rincones,
Ruben Rincones, Enrica Rincones, Angelita Garcia, Adelaida
Garcia, Aniceto Garcia, Betty Garcia, Railey Rincones, Gary
Busse, Alison Savage, and Lyford Consolidated Independent
School District,

*Petitioners,*

v.

South Texas Independent School District,

*Respondent*

On Petition for Review from the
Court of Appeals for the Thirteenth District of Texas

**Argued November 5, 2025**

JUSTICE HUDDLE delivered the opinion of the Court.

JUSTICE YOUNG filed a concurring opinion, in which Justice
Devine, Justice Sullivan, and Justice Hawkins joined.

This case asks whether a school district and a group of individual
taxpayers in Willacy County have standing to contest the county's
collection of an ad valorem tax for South Texas Independent School

District. We hold that the court of appeals erred in dismissing the taxpayers' claims for lack of standing but correctly determined that the school district lacks standing. Because the court of appeals did not consider whether other jurisdictional hurdles bar the taxpayers' claims, we remand the case to that court to decide those issues in the first instance.

## I. Background

Before federal law required public schools to provide free and appropriate education for students with disabilities, Texas enacted Education Code Chapter 26, which authorized the creation of "Rehabilitation Districts" to "provide education, training, special services, and guidance" for persons with mental or physical disabilities. Act of May 1, 1963, 58th Leg., R.S., ch. 106, § 2, 1963 Tex. Gen. Laws 186, 187 (repealed 1995); *see* Act of June 2, 1969, 61st Leg., R.S., ch. 889, §§ 26.01–.72, 1969 Tex. Gen. Laws 2735, 2974–83 (codifying Education Code Chapter 26). The enabling legislation authorized counties to establish a rehabilitation district or join an existing district through a countywide election. *See* Act of May 1, 1963, § 8(b), (g). The statute provides that a district's creation gives it the "power to levy taxes for residence centers and such other facilities, if any, as the [district's] Board of Directors may deem necessary or proper for the training and guidance of such persons and for maintenance and operation of" the district. *Id.* § 8(c). The Legislature did not provide procedures for leaving or disbanding a rehabilitation district, by vote or otherwise.

South Texas Independent School District (STISD) was originally formed under Chapter 26 as the Rio Grande Rehabilitation District for

2

Handicapped Persons. It was established by Cameron County voters in 1963, and Hidalgo County voted to join the following year. Willacy County voters did the same in 1974. The Willacy County Commissioners Court order calling for the special election stated that the vote would authorize the district to "annually levy ad valorem taxes on all taxable property within its boundaries at a rate not exceeding five cents (5¢) on each One Hundred Dollars ($100.00) of assessed valuation."

In 1983—after Congress passed legislation requiring public schools to educate students with disabilities[1]—the Texas Legislature amended Chapter 26, permitting rehabilitation districts to "provide the opportunity for vocational training to handicapped and nonhandicapped scholastics." Act of May 24, 1983, 68th Leg., R.S., ch. 506, § 3, sec. 26.73(a), 1983 Tex. Gen. Laws 2957, 2958–59 (repealed 1995). The Rio Grande Rehabilitation District changed its name to STISD. Although Chapter 26 was eventually repealed, STISD continues to operate under its provisions today. *See* TEX. EDUC. CODE § 11.301(a) (authorizing the continued operation of rehabilitation districts established before May 1, 1995).

In 2023, as in years past, STISD's board of directors adopted an ad valorem tax rate below the statutory maximum. But that year, the tax assessment drew a lawsuit by a group of Willacy County taxpayers and Lyford Consolidated Independent School District (LCISD), a school district located within Willacy County. The Taxpayers and LCISD

---

[1] Congress initially enacted the Education for All Handicapped Children Act of 1975, Pub. L. No. 94-142, 89 Stat. 773. The Act was later amended and renamed the Individuals with Disabilities Education Act. *See* 20 U.S.C. §§ 1400–1482.

allege that STISD now serves a different purpose than the one Willacy County voters approved in 1974. Whereas the voters authorized a rehabilitation district serving disabled persons, plaintiffs allege that is no longer STISD's principal mission, as evidenced by the fact that individuals with disabilities make up a negligible percentage of STISD's student population. LCISD also alleges that STISD's assessment increases the financial hardship on it and other school districts within STISD's boundaries by burdening their voters with double taxation.

Plaintiffs seek declarations that the tax is unlawful, and thus cannot be collected, for two reasons. First, they claim it violates the "contract with the voters" doctrine, which derives from Article I, Section 16 of the Texas Constitution. Second, they allege STISD's decision to levy a tax that lacks voter approval violates Article VII, Section 3(e) of the Texas Constitution, thus constituting ultra vires conduct. Plaintiffs seek a permanent injunction barring STISD from levying the tax and barring Willacy County and its tax assessor–collector from collecting the tax.[2]

STISD filed a plea to the jurisdiction, asserting that plaintiffs lack standing and governmental immunity bars their claims. The trial court denied the plea, and STISD filed an interlocutory appeal. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8).

The court of appeals reversed and rendered judgment for STISD, dismissing all claims for lack of standing. 696 S.W.3d 773, 787 (Tex. App.—Corpus Christi–Edinburg 2024). Relying on *Bland Independent*

---

[2] The County defendants are not parties to this appeal.

4

*School District v. Blue*, 34 S.W.3d 547 (Tex. 2000), the court held that the Taxpayers failed to demonstrate taxpayer standing because their claims risk significant "disruption of government operations," given STISD's reliance on the tax for the last several decades. 696 S.W.3d at 783 (quoting *Bland*, 34 S.W.3d at 558). As for LCISD, the court concluded standing was lacking because LCISD failed to allege a concrete or particularized injury that could be redressed by the courts. *See id.* at 786–87. Given these holdings, the court of appeals did not reach STISD's two alternative jurisdictional challenges: (1) plaintiffs' claims present a nonjusticiable political question;[3] and (2) plaintiffs' claims are barred by governmental immunity. *See id.* at 777, 787.

The Taxpayers and LCISD jointly filed a petition for review, which we granted.

## II. Discussion

A defendant's plea to the jurisdiction can challenge the plaintiff's pleadings, the existence of jurisdictional facts, or both. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018). When a jurisdictional plea challenges the pleadings, courts determine whether the plaintiff pleaded facts that affirmatively demonstrate subject matter jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). In ascertaining whether jurisdiction exists, we "construe the pleadings liberally in favor of the plaintiffs and look to the

---

[3] STISD did not raise the political question doctrine in the trial court. But because the "political question doctrine is an issue of subject-matter jurisdiction," *Van Dorn Preston v. M1 Support Servs., L.P.*, 642 S.W.3d 452, 459 (Tex. 2022), STISD could raise this argument for the first time on appeal. *See Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 850 (Tex. 2000).

pleaders' intent." *Id.* A court may grant the plea without affording the plaintiff the opportunity to amend when the pleadings "affirmatively negate the existence of jurisdiction." *Id.* at 227.

Conversely, when a plea to the jurisdiction challenges the existence of jurisdictional facts, the court considers relevant evidence submitted by the parties to determine whether a genuine issue of material fact exists. *Alamo Heights*, 544 S.W.3d at 770–71. When reviewing a trial court's ruling on such a plea, our standard of review mirrors that of traditional summary judgment. *Id.* at 771. We "take as true all evidence favorable to the nonmovant" and "indulge every reasonable inference and resolve any doubts" in her favor. *Miranda*, 133 S.W.3d at 228. Importantly, a jurisdictional plea "does not authorize an inquiry so far into the substance of the claims presented that plaintiffs are required to put on their case simply to establish jurisdiction." *Bland*, 34 S.W.3d at 554. However, if the evidence fails to raise a fact question regarding jurisdiction, the plea must be granted. *City of San Antonio v. Maspero*, 640 S.W.3d 523, 529 (Tex. 2022); *Miranda*, 133 S.W.3d at 228.

"Standing is a constitutional prerequisite to suit." *Heckman v. Williamson County*, 369 S.W.3d 137, 150 (Tex. 2012). Our standing test mirrors the federal test for Article III standing, which requires the plaintiff to have personally suffered an injury-in-fact that is traceable to the defendant's conduct and is likely to be redressed by a favorable decision. *Id.* at 154–55 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

To plead an injury sufficient to confer standing, the plaintiff must allege an "invasion of a legally protected interest," *id.* at 154 (quoting

6

*Lujan*, 504 U.S. at 560), that is "concrete and particularized, actual or imminent, not hypothetical," *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304–05 (Tex. 2008) (footnote omitted). The plaintiff, rather than a third party or the general public, "must be *personally* injured." *Heckman*, 369 S.W.3d at 155; *see also S. Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 307 (Tex. 2007) ("[A]s a general rule, to have standing an individual must demonstrate a particularized interest in a conflict distinct from that sustained by the public at large."). Even so, the mere fact that other people suffer the same injury as the plaintiff does not automatically deprive the plaintiff of standing to sue. *See Data Foundry, Inc. v. City of Austin*, 620 S.W.3d 692, 696 (Tex. 2021).

The second element of the standing test, traceability, requires a causal connection—that the plaintiff's alleged injury "fairly can be traced to the challenged action of the defendant, . . . [not] the independent action of some third party not before the court." *Heckman*, 369 S.W.3d at 155 (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41–42 (1976)). And the third element, redressability, is met where the requested relief will likely remedy the plaintiff's injury. *Id.* at 155–56. Because standing implicates subject matter jurisdiction, our review is de novo. *See Miranda*, 133 S.W.3d at 226.

## A. The Taxpayers have standing

In reversing the trial court's denial of STISD's plea to the jurisdiction, the court of appeals viewed the Taxpayers' claims through the lens of the taxpayer standing doctrine and reasoned that taxpayer standing was lacking due to "equitable considerations." 696 S.W.3d at 785. This was error. For the reasons discussed below, we conclude the

7

Taxpayers' allegations demonstrate standing under our traditional three-part constitutional standing test. *See Heckman*, 369 S.W.3d at 154–55.

First, the Taxpayers have satisfactorily alleged an injury-in-fact. They allege that STISD's unlawful and unconstitutional assessment of the ad valorem tax causes personal injury to each of them because they must pay the tax with money out of their pockets. Their injury is imminent because STISD decides whether to levy the tax, and Willacy County collects the tax, each year. And the injury affects each taxpayer in "a personal and individual way"—the tax will be collected from each one of them *personally* and *individually*. *See Data Foundry*, 620 S.W.3d at 696 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016)).

Second, the Taxpayers' alleged injury is directly traceable to the defendants' conduct. STISD's board of directors has discretion to levy the ad valorem tax, including choosing what rate to assess (within the limits set by former Chapter 26), each year. And Willacy County collects the tax. The Taxpayers' alleged injury is, therefore, *not* the result of the "independent action of some third party [who is] not before the court." *Heckman*, 369 S.W.3d at 155 (quoting *Simon*, 426 U.S. at 42).

Third, the remedy the Taxpayers seek would redress their injury. If the trial court were to grant the relief the Taxpayers seek—a declaration that the tax is unlawful and an injunction prohibiting its collection—the Taxpayers would no longer suffer the pocketbook injury about which they complain. This is all that our standing test requires.

STISD's response is two-fold. First, it contends that the Taxpayers' alleged injury is not particularized because it is suffered by

8

other members of the public—i.e., other residents of Willacy County who are also subject to the ad valorem tax. But the mere fact that the Taxpayers experience the same injury as other residents does not mean the Taxpayers' injury is not particularized. *See Data Foundry*, 620 S.W.3d at 696; *see also Abbott v. Mexican Am. Legis. Caucus*, 647 S.W.3d 681, 693 (Tex. 2022) (concluding that the alleged injury was not a "generalized grievance," even though it was "shared among county residents," because the injury was "not abstract but quite specific"). Indeed, we have recognized the type of pocketbook injury complained of here as a quintessential form of injury-in-fact sufficient to confer standing. *See, e.g.*, *Pub. Util. Comm'n v. Luminant Energy Co.*, 691 S.W.3d 448, 457–58 (Tex. 2024); *Mosaic Baybrook One, L.P. v. Simien*, 674 S.W.3d 234, 251 (Tex. 2023).

Second, STISD contends that the Taxpayers cannot demonstrate the tax is illegal under either constitutional provision referenced in their petition. *See* TEX. CONST. art. I, § 16 (barring, among other things, "any law impairing the obligation of contracts"), art. VII, § 3(e) (authorizing school districts to collect ad valorem taxes where a majority of the district's voters approve the tax "at an election to be held for that purpose"); *see also San Saba County v. McCraw*, 108 S.W.2d 200, 203 (Tex. 1937) ("[T]he vital conditions and safeguards surrounding the tax voted at the time of the election thereon became a part of the very election itself."). STISD argues that demonstrating the tax's illegality is required to establish *taxpayer* standing. This improperly conflates standing with the merits. Standing "in no way depends on the merits of the [plaintiff's] contention that particular conduct is illegal." *Data*

9

*Foundry*, 620 S.W.3d at 696 (alteration in original) (quoting *Andrade v. NAACP of Aus.*, 345 S.W.3d 1, 7 (Tex. 2011)); *see also Perez v. Turner*, 653 S.W.3d 191, 201 (Tex. 2022) (explaining that plaintiffs need not "demonstrate that the *allegedly* illegal activity was *actually* illegal" to establish taxpayer standing). But more importantly, as we explain below, resorting to the taxpayer standing doctrine was unnecessary in this case.

The parties and the court of appeals assessed the standing question through the lens of "taxpayer standing." 696 S.W.3d at 783–85. This Court has applied the doctrine in cases where a plaintiff who lacks a particularized injury seeks to enjoin the illegal expenditure of public funds. *See, e.g.*, *Perez*, 653 S.W.3d at 199; *Jones v. Turner*, 646 S.W.3d 319, 323 (Tex. 2022); *Williams v. Lara*, 52 S.W.3d 171, 179 (Tex. 2001). But in those cases, we emphasized—and reiterate today—that the doctrine has an exceedingly narrow scope given the general rule that taxpayers have no right to "bring suit to contest government decision-making." *Bland*, 34 S.W.3d at 555; *see also Osborne v. Keith*, 177 S.W.2d 198, 200 (Tex. 1944) (calling such suits "drastic" and emphasizing that government operations would be hamstrung if citizens could challenge allegedly "unwise or indiscreet expenditures" in court).

In short, the mere fact that a plaintiff's claim involves his payment of a tax does not require invocation of the taxpayer standing doctrine. Where, as here, a plaintiff satisfies our three-part constitutional standing test, the taxpayer standing doctrine should play no role in the analysis. The Taxpayers here each allege a particularized injury-in-fact that is traceable to the defendants, and they seek a

10

remedy that would redress that injury: an injunction barring STISD's unlawful *assessment* and the County defendants' impending unlawful *collection* of the challenged tax.[4] Because these allegations establish the Taxpayers' constitutional standing, the court of appeals erred in relying on the taxpayer standing doctrine to determine that standing was lacking.

The court's application of the taxpayer standing doctrine was problematic for an additional reason. The court ultimately held that the Taxpayers failed to demonstrate taxpayer standing because of the *effect* the suit, if allowed to proceed, could have on *STISD*. *See* 696 S.W.3d at 785 (concluding that the Taxpayers lacked standing because their suit "would cause a significant disruption to government operations and disturb the settled expectations of other taxpayers"). But the standing inquiry evaluates whether the plaintiff has alleged a sufficient personal stake in the controversy—at the case's outset—to guarantee genuine adversity. *See Heckman*, 369 S.W.3d at 154 ("In Texas, the standing doctrine requires a concrete injury to the plaintiff and a real controversy between the parties that will be resolved by the court."); *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 n.9 (Tex. 1993) ("Standing is determined at the time suit is filed in the trial court . . . ."). The court of appeals' focus on how the suit could burden STISD wrongly

---

[4] We acknowledge there may be claims within plaintiffs' petition that appear to seek an injunction against the particular *expenditure* of funds, such as expenditures for purposes other than those approved by Willacy County voters in 1974, rather than against the *collection* of a tax. If the case is ultimately remanded to the trial court, our holding does not preclude that court from analyzing whether the taxpayer standing doctrine applies to those claims.

11

shifted the focus away from the plaintiffs' actual circumstance at the time of filing toward the suit's impact on the defendant.

The court's "significant disruption" rationale seemingly was premised on its overreading *Bland*. In *Bland*, two taxpayers sued to enjoin a school district from making payments under a construction contract that had already been substantially performed. 34 S.W.3d at 549, 556. This Court dismissed, explaining that "[w]hen all that remains is a school district's repayment of a loan for work completed, allowance of a taxpayer action to prohibit such repayment threatens a substantial interference with governmental actions." *Id.* at 558. The Court emphasized its concern that the taxpayers' lawsuit threatened disruption of government operations and of the "settled expectations of other taxpayers in the district" who were "also served by the high school." *Id.* But in so holding, the Court placed great weight on the fact that performance of the contract at issue was nearly complete. *See id.* ("We need not decide here whether a governmental entity's receipt of something less than full performance under an allegedly illegal agreement is enough to preclude a taxpayer suit to prohibit future performance.").

*Bland* does not support the court of appeals' standing analysis. Whether substantial disruption would result from a court's judgment is not a proper standing inquiry. It does not inform whether there is a real controversy between parties for a court to resolve. *See Heckman*, 369 S.W.3d at 154. Nor is it tethered to our standing test's constitutional underpinnings. *See Inman*, 252 S.W.3d at 304 (explaining that the standing requirement derives from our Constitution's provisions

12

"den[ying] the judiciary authority to decide issues in the abstract" and "provid[ing] court access only to a 'person for an injury done him'" (first citing *Tex. Ass'n of Bus.*, 852 S.W.2d at 444; and then quoting TEX. CONST. art. I, § 13)).

At this preliminary stage, our task is to determine whether the Taxpayers sufficiently alleged an injury that satisfies our three-part constitutional standing test. We hold that they did.[5]

## B. LCISD lacks standing

LCISD argues that STISD's tax creates an unequal funding landscape, harming LCISD in a number of ways: first, STISD's failure to service an appropriate percentage of disabled students increases LCISD's financial burden; second, LCISD is unable to collect higher taxes from its residents because those residents are victims of "double taxation" at the hands of STISD; and third, STISD's funding structure gives it a competitive advantage over LCISD to attract teachers and staff. LCISD contends that an injunction barring STISD from levying its tax would allow LCISD to raise its own tax rate, thereby enabling LCISD to meet its financial obligations, pay off debt sooner, and offer competitive teacher salaries.

---

[5] STISD offers two additional arguments in support of its claim that the Taxpayers lack standing: abrogation and ratification. STISD contends that the Legislature abrogated any "contract with the voters" that formed during the 1974 Willacy County special election by expanding the purpose of rehabilitation districts to allow vocational training for all students. STISD also argues that the Taxpayers have effectively ratified this change in purpose by electing board members who continue to levy the tax. These are merits arguments that do not impact standing. *See, e.g.*, *Perez*, 653 S.W.3d at 201; *Data Foundry*, 620 S.W.3d at 696.

13

We conclude that LCISD lacks standing. To begin, we agree with the court of appeals that LCISD's claimed injury is speculative, not concrete. *See* 696 S.W.3d at 786. At the trial court's hearing on STISD's plea to the jurisdiction, LCISD's superintendent testified that disabled individuals make up about eleven percent of LCISD's student population, which approximates the state average. She also testified that LCISD could call an election to raise its taxes at any time and STISD could not prevent LCISD from doing so. LCISD's admitted control over whether and when to call such an election frustrates its argument that its alleged financial difficulty is an "injury" it has suffered at the hands of STISD.

This admission is also fatal because it shows that LCISD's alleged injury is not traceable to STISD. Beyond admitting that LCISD can call a vote to raise its tax rate regardless of STISD's actions, LCISD's superintendent agreed that the *Legislature* controls the funding of Texas schools. *See generally* TEX. EDUC. CODE §§ 48.001–.317 (outlining Texas's public school finance system, which is administered through the Foundation School Program). Thus, any harm flowing to LCISD from STISD's ad valorem tax assessment is indirect and attenuated.

Finally, unlike the individual Taxpayers, LCISD cannot show redressability. LCISD makes no showing that granting the relief it seeks would make it substantially likely that its voters will approve a tax increase in a hypothetical future election. *See Heckman,* 369 S.W.3d at 155 (noting that a plaintiff who requests an injunction lacks standing where "the injunction could not possibly remedy his situation"). Nor is there any showing, besides pure speculation, that the requested relief

14

would likely result in LCISD's offering higher salaries to potential staff or STISD's servicing more individuals with disabilities. In sum, unlike the individual Taxpayers, LCISD cannot meet the requirements of our constitutional standing test.

LCISD seeks refuge in our prior cases recognizing school districts' standing to challenge the constitutionality of the school funding system. *See, e.g.*, *Morath v. Tex. Taxpayer & Student Fairness Coal.*, 490 S.W.3d 826, 847–48 (Tex. 2016). But LCISD's allegations reveal that those cases are not analogous to its claim here. The districts in those cases challenged the funds *they* received directly from the State and the method by which the State allocated funds. *E.g.*, *id.* at 839–40; *Neeley v. W. Orange-Cove Consol. Indep. Sch. Dist.*, 176 S.W.3d 746, 751–52 (Tex. 2005); *Edgewood Indep. Sch. Dist. v. Kirby*, 777 S.W.2d 391, 391–92 (Tex. 1989). Here, by contrast, LCISD asserts claims against a neighboring school district, complaining of funding mechanisms that flow from the Legislature rather than the named district itself.

Taking as true all evidence favorable to LCISD, we conclude it has failed to raise a fact question regarding standing. Thus, we hold the court of appeals did not err in dismissing LCISD's claims for lack of standing.

### III.  Conclusion

The court of appeals correctly held that LCISD lacks standing, and we affirm the court of appeals' judgment to the extent it dismisses LCISD's claims on that basis. But we reverse the court of appeals' judgment dismissing the Taxpayers' claims for lack of standing. We

15

remand the case to the court of appeals for it to consider STISD's unaddressed jurisdictional challenges in the first instance.

                                                                       _____

                                                                       Rebeca A. Huddle
                                                                       Justice

**OPINION DELIVERED:** May 8, 2026